Argued and submitted July 29, 1981, reversed and remanded
for further consideration February 8, 1982

FUJIMOTO et al,
*Respondents,*
*v.*
CITY OF HAPPY VALLEY,
*Petitioner.*

(LUBA No. 80-111, CA A20400)

640 P2d 656

James R. Carskadon, Jr., Milwaukie, argued the cause
for petitioner. With him on the brief was Redman, Car-
skadon, Knauss & Kelley, Milwaukie.

Terry D. Morgan, Portland, argued the cause for
respondents. With him on the brief was Morgan & Shonk-
wiler, P.C., Portland.

Before Buttler, Presiding Judge, and Joseph, Chief
Judge, and Warden, Judge.

BUTTLER, P. J.

## BUTTLER, P. J.

Petitioner, City of Happy Valley (Happy Valley), seeks judicial review of a determination by the Land Use Board of Appeals (LUBA) that its comprehensive plan violates Statewide Planning Goal 2, in that it fails to provide for a residential development density equal to that said to have been assumed in the establishment of Metropolitan Service District's (Metro) Urban Growth Boundary (UGB).

In January, 1980, the Land Conservation and Development Commission (LCDC) acknowledged the Metro UGB as being in compliance with statewide planning goals. In the findings supporting adoption of the UGB, Metro apparently expressed an assumption that residential unit development inside the boundary would achieve an overall average density of somewhat over 6 units per net acre (UNA).[1] Happy Valley is a constituent jurisdiction in the Metro region, and after Metro reviewed Happy Valley's comprehensive plan, it wrote to Happy Valley in June, 1980, stating in relevant part:

"In summary, with the exception of a few small cities with limited potential for new housing development or redevelopment, jursidictions in the Metro area must accommodate at least a 50/50 SF/MF [single family/multifamily] new construction ratio unless otherwise justified and provide opportunities that moderate the cost of housing. Also, they must provide for an overall new construction density of at least 6 UNA depending on jurisdiction size, amount of buildable land and locational factors. For smaller cities with some growth potential, overall new construction densities of 6 UNA are minimally sufficient to meet Goal #10. For medium-sized cities and counties with lands generally bordered by rural land, local plans must provide for about 8 UNA. Larger jurisdictions must plan for about 10 UNA for new construction. In practical terms, this will mean average single family lot sizes of 6,000 to 8,000 square feet and multi-family densities of about 20 UNA."

Previous communications from Metro to Happy Valley had emphasized that before Metro would recommend Happy

---

[1] Neither the UGB map nor its supporting documentation was made part of the record before LUBA or on appeal here.

Valley's comprehensive plan for acknowledgment by LCDC, buildable land would have to be designated for at least 6 UNA.

Respondents own a total of approximately 150 acres of undeveloped land in Happy Valley, which they seek to develop. In the course of the comprehensive planning process before the city, respondents sought relatively high development densities for their properties. In August, 1980, Happy Valley adopted its comprehensive plan and implementing ordinances. Despite the previous communications from Metro, the comprehensive plan, as adopted, provided for an overall average residential density of only 2.46 UNA for new development; it allowed respondents to develop their land at a density no greater than 3 UNA.

In September, 1980, respondents challenged Happy Valley's comprehensive plan before LUBA,[2] alleging violations of Statewide Planning Goals 2, 3, 9, 10, 11, 12 and 14, and of Article I, section 20, of the Oregon Constitution. In its final order, LUBA characterized the attack on the validity of the comprehensive plan as being directed principally at the low average density figure of 2.46 UNA. LUBA resolved the matter by finding a *prima facie* inconsistency between the comprehensive plan and the regional plan, of which it considered the Metro UGB to be a part, under Goal 2.[3] LUBA concluded:

> "Happy Valley has not demonstrated that the land which is suitable for development cannot support densities which would enable Happy Valley to meet the overall 6 units per net acre average. Happy Valley has not demonstrated any justification for deviation from the density

---

[2] No party contends that this proceeding is premature and that the issues raised should be resolved in the acknowledgment process relating to Happy Valley's comprehensive plan.

[3] Goal 2 provides in relevant part:

"[C]ity, county, state and federal agency and special district plans and actions related to land use shall be consistent with the comprehensive plans of cities and counties and regional plans adopted under ORS 197.705 through 197.795."

It is not clear whether the Metro UGB is a "regional plan" within the meaning of Goal 2, particularly in light of the fact that ORS 197.705 to 197.795 were repealed. Or Laws 1977, ch 665, § 24. We assume, for the purpose of this opinion, that LUBA was correct in so treating it.

standard contained in the Metro UGB. Accordingly, Happy Valley's comprehensive plan violates Statewide Planning Goal 2."

On appeal, Happy Valley contends that Metro's assumption of an overall regional density in establishing the Metro UGB does not constitute a minimum density requirement binding on constituent local governments. It is worthwhile to scrutinize LUBA's reasoning in finding such a standard:

"* * * As part of its review of the Metro UGB for acknowledgement, LCDC concluded Metro's assumptions concerning overall density were not necessarily adequate to meet Goal 10 although they were adequate for meeting the purposes of Goal 14:

" 'Falling short of regional UGB housing guidelines may, in certain limited circumstances, be acceptable. However, merely zoning for these minimal regional densities and mix assumptions does not necessarily guarantee compliance with Goal 10. Generally speaking to comply with Goal 10 local zoning must provide for densities considerably in excess of UGB densities assumptions.' Adopted DLCD acknowledgement of compliance report on Metro UGB, December 13, 1979.

"*In its acknowledgement of the Metro UGB, LCDC conditioned acknowledgement* upon Metro's assurance that it would provide effective growth control mechanisms and *upon Metro's implied assurance that development within the Metro UGB would occur at least [at] an average overall density of 6 plus units per net acre* and greater if and where necessary to meet regional housing needs. *Thus, the Metro UGB* not only delineates the area within which urban growth is to occur in the Metro region, it also *sets forth an average density requirement which must be met by jurisdictions with planning and zoning responsibilities within the confines of the Metro UGB."* (Emphasis supplied.)

LUBA's reasoning hinges upon the premise that the Metro UGB would not have been acknowledged were it not for an "implied assurance" that a minimum development density would be achieved inside the boundary. However, that premise is unsupported in the record; even if it were supported, it is highly doubtful that an "implied assurance" by Metro to LCDC, not explicitly contained in the Metro UGB, may be treated as a density standard which Metro constituent jurisdictions are required to

follow in order to be *consistent* with the Metro UGB. From all that appears in this record, the Metro UGB does not itself purport to impose a minimum density standard for constituent jurisdictions.

Moreover, the quoted portion of LCDC's Metro UGB acknowledgment report speaks only in terms of what is required for compliance with Goal 10 (housing).[4] The report makes residential development density a substantive goal issue, not a matter of Goal 2 consistency. Whether Happy Valley's comprehensive plan complies with Goal 10 was not reached by LUBA in its consideration of this case. The acknowledgment order itself does not contain an express minimum density requirement.[5] Unlike LUBA, we do not interpret LCDC's acknowledgment as establishing a *prima facie* minimum density standard.

We do not reach the question of whether Metro is authorized to make such a density requirement part of its urban growth boundary.[6] We hold only that a regional average residential development *assumption,* which is only one of many factors considered in the formation of the Metro urban growth boundary, does not constitute a *prima*

---

[4] Goal 10 provides:

"GOAL: To provide for the housing needs of citizens of the state.

"Buildable lands for residential use shall be inventoried and plans shall encourage the availability of adequate numbers of housing units at price ranges and rent levels which are commensurate with the financial capabilities of Oregon households and allow for flexibility of housing location, type and density."

[5] Although LCDC's acknowledgment order does not appear in the record, we take judicial notice of it. ORS 40.070(1)(Rule 201(c)); 40.080 (Rule 201(f)); 40.090(2)(Rule 202(2)).

[6] ORS 268.390(3) authorizes Metro to adopt a UGB in compliance with LCDC goals. ORS 268.390(4) confers authority on Metro to require cities and counties to conform their plans to the Metro UGB. The question we do not resolve here is whether the Metro UGB itself may consist of more than a line on a map, within which urban growth is permissible and beyond which it is not. As a practical matter, on the assumption that Metro's coordinative responsibilities under ORS 197.190(1), as amended by Or Laws 1981, ch 748, § 27, includes control over residential development densities, the alternative to some sort of *prima facie* minimum density standard would appear to require the simultaneous adjustment by Metro of myriad local densities — a task roughly analogous to solving a score of Rubik's Cubes at once, under severe time pressure.

*facie* density *requirement* for constituent jurisdictions for the purposes of Goal 2.[7]

We reverse, because we find LUBA's determination of a Goal 2 inconsistency between Happy Valley's comprehensive plan and the Metro UGB to be "unlawful in substance," Or Laws 1979, ch 772, § 6a(8)(a), and we remand to LUBA for consideration of respondents' other contentions.

Reversed and remanded for further consideration.

---

[7] To hold otherwise would raise a variety of questions with respect to other assumptions and projections which Metro made in addressing various other goals and in achieving LCDC acknowledgment of its UGB. If LUBA is correct in concluding that the Metro UGB, including all of the assumptions underlying its acknowledgment, imposes requirements on constituent governments, it would appear that the UGB would be turned into a master comprehensive plan for the region. We do not understand LUBA to have so considered the Metro UGB here.