Argued and submitted March 7, 1983, affirmed in part; reversed in part, and remanded
February 8, 1984

## CITY OF HAPPY VALLEY,
*Petitioner,*

*v.*

## LAND CONSERVATION AND DEVELOPMENT
## COMMISSION et al,
*Respondents.*

## (CA A24967)
677 P2d 43

*See also* 66 Or App 803, 677 P2d 47.

James R. Carskadon, Jr., Milwaukie, argued the cause for petitioner. With him on the brief was Redman, Carskadon, Knauss & Kelley, Milwaukie.

Terry D. Morgan, Portland, argued the cause for respondents Mas Fujimoto, Delmer Eisert, Robert and Agnes Guy. With him on the brief was Morgan & Shonkwiler, P.C., Portland.

Mary J. Deits, Assistant Attorney General, Salem, argued the cause for respondent Land Conservation and Development Commission. With her on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Kevin L. Hanway, Lake Oswego, filed the brief for Homebuilders of Metropolitan Portland.

Mark J. Greenfield, Portland, filed the brief for respondent 1000 Friends of Oregon.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

Petitioner, City of Happy Valley, seeks judicial review, ORS 183.480, of a Land Conservation and Development Commission (LCDC) order denying acknowledgment of petitioner's comprehensive plan. It contends that LCDC exceeded its statutory authority and abused its discretion in adopting the order. We reverse one part of the order, affirm the remaining parts and remand.

Petitioner lies within the Portland Metropolitan Service District's urban growth boundary (Metro UGB), which was acknowledged in January, 1980. Metro's findings in support of its UGB assumed that local jurisdictions would provide for a 50-50 single family-multi-family new construction mix and residential density of at least 6.23 units per net acre (UNA). LCDC concluded that that density was adequate for Goal 14 (Urbanization) compliance but that, in order to comply with Goal 10 (Housing), some local zoning would have to provide for "densities considerably in excess of UGB density assumptions." By a memo of June 6, 1980, from the Department of Land Conservation and Development (Department), the LCDC Metro subcommittee, the Metro staff and local jurisdictions were informed:

> "Relatively small Metro area cities with some growth potential (with a projected build-out population of less than 8,000) are not expected to play a major housing role. The cities of Cornelius, Durham, Fairview, Happy Valley and Sherwood are included in this category. A minimum acceptable overall new construction density for these jurisdictions is 6 UNA."

Petitioner adopted a comprehensive plan and implementing ordinances in August, 1980, and submitted them to LCDC for acknowledgment review, ORS 197.251, in September, 1980. Contrary to the expectations outlined in the June 6 memo, the plan provided for average residential density of 2.46 UNA and made no provision for multiple family housing. Respondents (other than LCDC and DLCD) and several other parties filed objections, and an acknowledgment hearing was held in February, 1981, at which an LCDC subcommittee was appointed to review the plan. The subcommittee recommended that petitioner revise its plan to meet the

"* * * regional housing and mix standards; *i.e.*, a minimum of six dwelling units per net buildable acre, and provision for at least a 50:50 mix of new detached to attached housing"

because of its presence within the Metro UGB. LCDC subsequently directed petitioner to meet that recommendation.

In December, 1981, LCDC formally established the required density and housing type mix for the Metro UGB in its "Metropolitan Housing Rule," OAR 660-07-000 through 660-07-360, which provides, in pertinent part:

"660-07-000. The purpose of this rule is to assure opportunity for the provision of adequate numbers of needed housing units and the efficient use of land within the Metropolitan Portland (Metro) urban growth boundary, to provide greater certainty in the development process and so to reduce housing costs. This rule in and of itself, will not affect the acknowledged status of a jurisdiction.

"660-07-025. OAR 660-07-030 and 660-07-035 are intended to establish by rule regional residential density and mix standards to measure Goal 10 Housing compliance for cities and counties within the Metro urban growth boundary, and to ensure the efficient use of residential land within the regional UGB consistent with Goal 14 Urbanization. OAR 660-07-35 implements the Commission's determination in the Metro UGB acknowledgement proceedings that regionwide, planned residential densities must be considerably in excess of the 6.23 dwelling units per net buildable acre assumed in Metro's 'UGB Findings.'

"660-07-030. Jurisdictions other than small developed cities must designate sufficient buildable land to provide the opportunity for at least 50 percent of new residential units to be attached single family housing or multiple family housing.

"660-07-035(1). The Cities of Cornelius, Durham, Fairview, Happy Valley and Sherwood must provide for an overall density of six or more dwelling units per net buildable acre. These are relatively small cities with some growth potential (i.e. with a regionally coordinated population projection of less than 8,000 persons for the active planning area)."

Also in December, LCDC issued a continuance order giving petitioner until February 18, 1982, to submit a work program for correcting plan deficiencies. Petitioner did not submit the program, and in April, 1982, LCDC issued an order

denying acknowledgment for failure to comply with Goals 1, 2, 5, 6, 9, 10, 11, 12 and 14. Petitioner appeals.

■     Petitioner argues that the housing mix and density requirements stated in the rules, however valid as applied to other jurisdictions, may not be applied to it, because the legislature has decreed otherwise. It relies on ORS 197.303 and 197.307, which respectively provide in part:

> "(1)   As used in ORS 197.307, until the beginning of the first periodic review of a local government's acknowledged comprehensive plan, 'needed housing' means housing types determined to meet the need shown for housing within an urban growth boundary at particular price ranges and rent levels. On and after the beginning of the first periodic review of a local government's acknowledged comprehensive plan, 'needed housing' also means housing that includes, but is not limited to, attached and detached single-family housing and multiple family housing for both owner and renter occupancy and manufactured homes, as defined in ORS 197.295, located in either mobile home parks or subdivisions.

> "(2)   Subsection (1) of this section shall not apply to:

> "(a)   A city with a population of less than 2,500.

> "(b)   A county with a population of less than 15,000."

> "(1)   The availability of housing opportunities for persons of lower, middle and fixed income is a matter of statewide concern.

> "(2)   When a need has been shown for housing within an urban growth boundary at particular price ranges and rent levels, needed housing shall be permitted in a zone or zones with sufficient buildable land to satisfy that need."

ORS 197.307 is essentially a restatement of Goal 10.[1] It provides that, in the circumstances here,[2] "needed housing" shall be permitted, that is, provided for. Petitioner contends that, because it is a city with a population of less than 2,500,

---

[1] Goal 10, OAR 660-15-000, provides:

"GOAL: To provide for the housing needs of citizens of the state.

"Buildable lands for residential use shall be inventoried and plans shall encourage the availability of adequate numbers of housing units at price ranges and rent levels which are commensurate with the financial capabilities of Oregon households and allow for flexibility of housing location, type and density."

[2] Petitioner does not argue that the need for housing at particular price ranges and levels has not been shown.

ORS 197.303(2)(a) exempts it from the provisions of subsection (1) of that statute defining "needed housing." Given that exemption, it contends that LCDC may not apply to petitioner its rule (OAR 660-07-030), requiring that at least 50 percent of new residential units be attached single family housing or multiple family housing. So to apply that rule, petitioner argues, would be contrary to the express provisions of the statute.

There is merit to that argument and, in fact, the rule appears to acknowledge the statutory limitation by limiting the application of its rule to "Jurisdictions other than small developed cities * * *." To avoid a conflict with the statute, we construe the rule's limiting language to mean the same thing as subsection (2)(a) of the statute — jurisdictions other than cities with a population of less than 2,500. We conclude, therefore, that both the statute and the rule except petitioner from their application, and that LCDC may not require petitioner to provide a specific housing mix *by types* as provided in ORS 197.303(1). The legislative history supports that interpretation.[3]

■   Notwithstanding that conclusion, the provisions of ORS 197.307 apply to petitioner, and LCDC, as a condition of acknowledgment, may require it to permit needed housing at particular price ranges and rent levels. Because the definition of "needed housing" contained in ORS 197.303(1) does not apply to that phrase as used in ORS 197.307 as it applies to petitioner, the requirements that may be imposed on petitioner appear to be less specific and stringent. The two

---

[3] In testimony before the House Committee on Environment and Energy, Burton Weast, representing Homebuilders of Metropolitan Portland (one of the respondents here), explained the effect, in part, of what was to become ORS 197.303 and 197.307, as follows:

"BURTON WEAST: No, all four. An example, you might say, of each of those four kinds of housing. For example, attached single-family could be anything from a duplex to a sixplex, but there would be a requirement that those four basic types of housing be permitted under some circumstance within the local government plan. Now we provide two exceptions. The two exceptions are 1) We except cities that are under 2,500 in population, the theory being that very small cities do not necessarily need all those four types of housing and may not be in a position where they can really apply it. Also, they do not have planning staffs, generally. We went through the list of cities and agreed on that number based on the cities who generally do not have planning staffs who can handle this change or implement it. Second, and the other population exception is for counties * * *."

statutes were enacted at the same time (Or Laws 1981, ch 884), and it seems reasonably clear that at least one purpose of ORS 197.303(2)(a) and (b) is to impose a lesser requirement on the smaller cities and counties *(see* n 3, *supra)* to meet specific housing needs. How those requirements are to be articulated in the first instance will be up to LCDC on remand.

■ Petitioner also contends that the quoted statutes preclude LCDC from imposing a density requirement in its order. We find nothing in those two statutes that deal with density, as such.[4] Accordingly, we reject that contention and affirm that part of the order.

■ Finally, petitioner argues that LCDC "abused its discretion" in refusing to acknowledge its comprehensive plan, but does not articulate what LCDC did that was unlawful. It complains that LCDC "substituted its staff judgment concerning goal compliance for that of Petitioner's land use planners." However, there is no reason why LCDC may not rely on its staff reports in determining whether a plan is in compliance with the goals under ORS 197.251, in the absence of any legal deficiency in those reports. There was no error.[5]

■ The question remains whether the denial order must be reversed, as contended by petitioner, because of the invalid housing mix requirement. The denial order was not based exclusively on petitioner's refusal to plan for the required

---

[4] Petitioner does not challenge the validity of the rule imposing density requirements on certain cities, including petitioner (OAR 660-07-035(1)), other than by contending that LCDC may not apply it to petitioner under the two statutes discussed. We decide only that question.

[5] Respondent 1000 Friends of Oregon also argues that petitioner's appeal must fail because it is in fact a collateral attack on its inclusion within the Metro UGB in January, 1980, which it did not challenge at that time. *See 1000 Friends of Oregon v. Clackamas County,* 40 Or App 529, 595 P2d 1275 (1979). Inclusion within a UGB means that petitioner's lands are "urban or urbanizable." *See* OAR 660-00-015, Goal 14; *Williamette University v. LCDC,* 45 Or App 355, 608 P2d 1178 (1980). 1000 Friends argues that petitioner "is unwilling to accept its 'urban' designation and the responsibilities that accompany that designation."

Although inclusion within the UGB gives petitioner urban or urbanizable status, it does not determine exactly what that would mean for petitioner's land use planning process. *See Fujimoto v. City of Happy Valley,* 55 Or App 905, 640 P2d 656 (1982). Moreover, petitioner does not argue that it is not urban or urbanizable; it argues that, regardless of that designation, LCDC may not require certain things of it because of ORS 197.303 and 197.307. Petitioner is not foreclosed from challenging the denial order on that basis.

housing mix; LCDC found non-compliance with many of the other goals. Accordingly, only that part of the order that requires a particular housing mix is reversed; the balance of the order is affirmed. The case must be remanded to LCDC to permit the commission to articulate its requirements for housing needs under ORS 197.307.

Affirmed in part; reversed in part, and remanded.