Argued and submitted July 7, affirmed August 10, 1994

SHELTER RESOURCES, INC.,
John Lape, Laura Coomes,
Oregonians in Action
and Harley Mishler,
*Petitioners,*

*v.*

CITY OF CANNON BEACH,
*Respondent.*

(LUBA 93-225)

Paul VISHER,
*Petitioner below,*

*v.*

CITY OF CANNON BEACH,
*Respondent below,*

*and*

SHELTER RESOURCES, INC.,
John Lape, Laura Coomes,
Oregonians in Action
and Harley Mishler,
*Intervenor-Respondents below.*

(LUBA 93-229; CA A84202)

879 P2d 1313

Steven L. Pfeiffer argued the cause for petitioners Shelter Resources, Inc., John Lape and Laura Coomes. With him on the brief were Michael R. Campbell and Stoel Rives Boley Jones & Grey.

David B. Smith argued the cause for petitioners Oregonians in Action and Harley Mishler. With him on the brief was Dorothy S. Cofield.

Daniel Kearns argued the cause for respondent. With him on the briefs was Preston Gates & Ellis.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

DEITS, P. J.

Haselton, J., concurring.

**DEITS, P. J.**

Petitioners Shelter Resources, Inc., (SRI) and Oregonians in Action (OIA)[1] seek review of LUBA's decision affirming the City of Cannon Beach's denial of SRI's application for approval of a tentative subdivision plat for a low-income housing project. We affirm.

The city based its denial of the application on its interpretation of five comprehensive plan housing policies, which it concluded contained applicable approval criteria. LUBA first rejected petitioners' contention that the city's interpretation of the policies was reviewable under ORS 197.829(4) for consistency with ORS 197.307 and Goal 10, two housing provisions of state law. LUBA held that the statute and goal, as material here, do not apply to cities with populations under 2,500 people, like the City of Cannon Beach; therefore, it concluded that the plan policies did not implement those state provisions and review under ORS 197.829(4) was not available. LUBA then considered and rejected petitioners' other arguments, including that the interpretations were reversible under ORS 197.829(1), (2) and (3), which provide for review of local interpretations of local land use legislation for consistency with the language, purpose and policy of the legislation.[2]

In their arguments to us, petitioners contend, *inter alia*, that LUBA was incorrect both in concluding that subsection (4) was inapplicable and in sustaining the city's interpretations of the policies under the other subsections of ORS

---

[1] SRI and OIA have appeared separately, and each is joined by individual petitioners. We use the designations SRI and OIA to refer to those who appear with them, as well as the organizational petitioners themselves.

[2] ORS 197.829 provides:

"The Land Use Board of Appeals shall affirm a local government's interpretation of its comprehensive plan and land use regulations, unless the board determines that the local government's interpretation:

"(1) Is inconsistent with the express language of the comprehensive plan or land use regulation;

"(2) Is inconsistent with the purpose for the comprehensive plan or land use regulation;

"(3) Is inconsistent with the underlying policy that provides the basis for the comprehensive plan or land use regulation; or

"(4) Is contrary to a state statute, land use goal or rule that the comprehensive plan provision or land use regulation implements."

197.829. We turn first to the arguments concerning the applicability of subsection (4).

LUBA explained its conclusion on that matter as follows:

"With regard to consistency with goal or statutory provisions implemented by plan provisions, both Goal 10 and ORS 197.307(6) establish requirements related to 'needed housing.' However, 'needed housing' is defined in both Goal 10 and ORS 197.303 in a manner that specifically excludes cities with a population of less than 2,500 people. There is no dispute the population of the City of Cannon Beach is less than 2,500 people. Therefore, for purposes of our *scope of review under ORS 197.829(4)*, the city's plan and land use regulations do not implement either ORS 197.307(6) or the 'needed housing' provisions of Goal 10. Accordingly, the city's interpretation of its plan and land use regulations is not subject to reversal or remand on the basis of inconsistency with statutory and goal standards relating to 'needed housing.' " (Emphasis in original; footnote omitted.)

ORS 197.303(1) and (2) provide:

"(1)   As used in ORS 197.307, until the beginning of the first periodic review of a local government's acknowledged comprehensive plan, 'needed housing' means housing types determined to meet the need shown for housing within an urban growth boundary at particular price ranges and rent levels. On and after the beginning of the first periodic review of a local government's acknowledged comprehensive plan, 'needed housing' also means:

"(a)   Housing that includes, but is not limited to, attached and detached single-family housing and multiple family housing for both owner and renter occupancy;

"(b)   Government assisted housing;

"(c)   Mobile home or manufactured dwelling parks as provided in ORS 197.475 to 197.490; and

"(d)   Manufactured homes on individual lots planned and zoned for single-family residential use that are in addition to lots within designated manufactured dwelling subdivisions.

"(2)   Paragraphs (a) and (d) of subsection (1) of this section shall not apply to:

"(a)   A city with a population of less than 2,500.

"(b)    A county with a population of less than 15,000."

Goal 10 contains a limitation that is comparable, but not identical, to the exemption in ORS 197.303(2). ORS 197.307(6), on which petitioners rely, provides:

"Any approval standards, special conditions and the procedures for approval adopted by a local government shall be clear and objective and shall not have the effect, either in themselves or cumulatively, of discouraging needed housing through unreasonable cost or delay."

SRI argues that LUBA erred by construing ORS 197.303(2) and the corresponding language in Goal 10 as making *all* of the "needed housing" provisions in the statutes and the goal inapplicable to the small cities. It asserts that subsection (2) excludes the application only of paragraphs (a) and (d) of subsection (1) to those cities. According to SRI, the proposed project here is for "government assisted housing" and, as such, it comes within ORS 197.303(1)(b), which is not made inapplicable to the city by ORS 197.303(2).

■■    SRI's reading of the statute is correct. The problem with its position, however, is that the city did not find that this was "government assisted housing." Whether the project is a government assisted one is a question of fact. The evidence regarding government funding in the local proceedings was inconclusive and tended to indicate that the receipt of federal funds was uncertain. The city made no finding on the question, and neither SRI nor any other petitioner assigned that omission as error in the appeal to LUBA. LUBA's only comment on government funding was in its statement of facts, where it quoted the statement in SRI's petition for review that characterized the proposed subdivision as one for "low-income residents, *provided that* financing from the U.S. Farmers Home Administration [is] available for the development." (Emphasis supplied.) Accordingly, LUBA did not err in rejecting SRI's contention that ORS 197.303(1) is applicable under these circumstances.

OIA makes a different argument. It contends that the "mere fact that ORS 197.303 and Goal 10 exclude small cities from certain 'needed housing' requirements does not exempt such small cities * * * from all 'needed housing' mandates" of ORS 197.307 and the goal. OIA relies on *City of*

*Happy Valley v. LCDC*, 66 Or App 795, 679 P2d 43 (1984). There, we addressed the petitioning city's arguments that, because it had a population of less than 2,500, certain requirements of ORS 197.307, Goal 10 and the Goal 10 implementing rules did not apply to it. We said:

"ORS 197.307 is essentially a restatement of Goal 10. It provides that, in the circumstances here, 'needed housing' shall be permitted, that is, provided for. Petitioner contends that, because it is a city with a population of less than 2,500, ORS 197.303(2)(a) exempts it from the provisions of subsection (1) of that statute defining 'needed housing.' Given that exemption, it contends that LCDC may not apply to petitioner its rule (OAR 660-07-030), requiring that at least 50 percent of new residential units be attached single family housing or multiple family housing. So to apply that rule, petitioner argues, would be contrary to the express provisions of the statute.

"There is merit to that argument and, in fact, the rule appears to acknowledge the statutory limitation by limiting the application of its rule to 'Jurisdictions other than small developed cities * * *.' To avoid a conflict with the statute, we construe the rule's limiting language to mean the same thing as subsection (2)(a) of the statute—jurisdictions other than cities with a population of less than 2,500. We conclude, therefore, that both the statute and the rule except petitioner from their application, and that LCDC may not require petitioner to provide a specific housing mix *by types* as provided in ORS 197.303. The legislative history supports that interpretation.

"Notwithstanding that conclusion, the provisions of ORS 197.307 apply to petitioner, and LCDC, as a condition of acknowledgment, may require it to permit needed housing at particular price ranges and rent levels. Because the definition of 'needed housing' contained in ORS 197.303(1) does not apply to that phrase as used in ORS 197.307 as it applies to petitioner, the requirements that may be imposed on petitioner appear to be less specific and stringent. The two statutes were enacted at the same time (Or Laws 1981, ch 884), and it seems reasonably clear that at least one purpose of ORS 197.303(2)(a) and (b) is to impose a lesser requirement on the smaller cities and counties (*see* n 3, *supra*) to meet specific housing needs. How those requirements are to be articulated in the first instance will be up to LCDC on remand." 66 Or App at 799-801. (Emphasis in original; footnotes omitted.)

OIA describes *City of Happy Valley* as holding that "even small cities exempted from certain 'needed housing' requirements by ORS 197.303 are still subject to the demands of ORS 197.307," and are "only exempt from the demands of ORS 197.303(1)." However, we understand *City of Happy Valley* to also hold that the provisions in ORS 197.307 that relate directly to "needed housing," as defined in ORS 197.303(1), are made inapplicable by ORS 197.303(2) to cities with populations under 2,500.[3]

■    In this case, the provision of ORS 197.307 on which petitioners rely is subsection (6). It relates directly to "needed housing" and, as such, it is inapplicable to the city. OIA makes no separate argument concerning the applicability to the city of the Goal 10 "needed housing" provisions, and we discern no basis for a different conclusion. We hold that the provisions on which petitioners rely are inapplicable and that LUBA did not err.

We have considered petitioners' other arguments and reject them without discussion.

Affirmed.

**HASELTON, J.,** concurring.

I agree with all aspects of the majority opinion and with its conclusion about the meaning of *City of Happy Valley v. LCDC*, 66 Or App 795, 677 P2d 43, *rev den* 297 Or 82 (1984). However, our holding in *Happy Valley* is, unhappily, much murkier than the majority suggests.

The excerpts of *Happy Valley* the majority quotes read like a cross between *Fasano v. Washington Co. Comm.*, 264 Or 574, 507 P2d 23 (1973), and *Finnegans Wake*. On one hand, as the majority states, that opinion implies that the provisions of ORS 197.307 pertaining to "needed housing," as defined in ORS 197.303(1), do not apply to cities with populations of less than 2,500. *City of Happy Valley v. LCDC, supra*, 66 Or App at 800. On the other hand, it also suggests

---

[3] The version of ORS 197.303(2) that we applied in *City of Happy Valley* made ORS 197.303(1) inapplicable in its entirety to small cities, while the current version of subsection (2), quoted earlier in the text, makes only certain paragraphs of subsection (1) inapplicable. However, OIA does not contend that that difference affects the issues in this case.

that ORS 197.303(2) notwithstanding, the "needed housing" provisions of ORS 197.307 apply to those smaller cities in some "less specific and stringent" way than the definition of the term in ORS 197.303(1) would require. 66 Or App at 800-01. What exactly the content of that "less specific and stringent" standard might be is unclear.

The first of these approaches is utterly consistent with, and compelled by, the plain language of ORS 197.303-(2)(a). The second, however laudable its impulse, bespeaks penumbras and emanations.

ORS 197.303(2)(a) means what it says. Those provisions of ORS 197.307 that relate directly to "needed housing" other than government assisted housing or mobile home or manufactured dwelling parks, ORS 197.307(1)(b) and (c), do not apply to cities with populations of less than 2,500. *Happy Valley's* implication to the contrary should be disregarded.