Argued and submitted April 9, on petition, affirmed; on cross-petition,
reversed and remanded July 7, 2010

Alan MONTGOMERY,
*Respondent*
*Cross-Petitioner,*

*v.*

CITY OF DUNES CITY,
*Petitioner*
*Cross-Respondent.*

Land Use Board of Appeals
2008135; A144619

236 P3d 750

David N. Allen argued the cause for petitioner-cross-respondent. With him on the briefs was Macpherson, Gintner & Diaz.

Bill Kloos argued the cause for respondent-cross-petitioner. With him on the brief was Law Office of Bill Kloos, PC.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

HASELTON, P. J.

**HASELTON, P. J.**

Petitioner City of Dunes City (the city) seeks judicial review, and respondent Montgomery cross-petitions for judicial review, of an order of the Land Use Board of Appeals (LUBA) in which LUBA remanded the city's denial of respondent's application for the approval of a preliminary subdivision plat. We reject without discussion the city's two assignments of error concerning LUBA's application of the substantial evidence standard and its remand for the city to interpret a provision of an erosion control ordinance. We write only to address respondent's sole legal contention in his cross-petition. In particular, respondent contends that LUBA erred in concluding that, even though the city has identified that single-family housing is "needed housing" in its comprehensive plan, ORS 197.303(2)(a) excepts the city (which has a population of less than 2,500 residents) from reviewing applications for the development of such housing under the "clear and objective" standards prescribed in ORS 197.307(6).[1] We determine that LUBA's order in that regard was "unlawful in substance," ORS 197.850(9)(a), and, consequently, reverse, in part, and remand.

We take the procedural facts from LUBA's order. In 2007, respondent submitted an application to the city for a 20-lot subdivision. Although the planning commission recommended approval with certain conditions, the city council ultimately denied respondent's application, reasoning that "[respondent] did not submit required information, or submitted insufficient information, addressing one or more relevant standards or criteria" and that "this lack of information was insufficient for the imposition of reasonable conditions of approval." As pertinent to the issue on review, in its order denying the application, the city council stated that

"Dunes City has a population of less than 2,500, as projected in the city's comprehensive plan (rev. 9-16-97), and further verified by 2007 population estimates from the Population Research Center at Portland State University. Therefore, per ORS 197.303(2)(a), clear and objective

---

[1] The text of ORS 197.303 and ORS 197.307 is set out below. 236 Or App at 197.

approval standards for 'needed housing' do not apply; but, rather, standards that are discretionary can apply."

Respondent appealed the city's order to LUBA.

Before recounting the parties' contentions before LUBA (and on review) and LUBA's analysis and disposition, we begin by describing ORS 197.303 and ORS 197.307(6). ORS 197.307(6) applies to "needed housing," as that term is defined in ORS 197.303, and provides that "[a]ny approval standards, special conditions and the procedures for approval adopted by a local government *shall be clear and objective* and may not have the effect, either in themselves or cumulatively, of discouraging needed housing through unreasonable cost or delay." (Emphasis added.) ORS 197.303, in turn, defines "needed housing" as follows:

"(1)   As used in ORS 197.307, until the beginning of the first periodic review of a local government's acknowledged comprehensive plan, 'needed housing' means housing types determined to meet the need shown for housing within an urban growth boundary at particular price ranges and rent levels. On and after the beginning of the first periodic review of a local government's acknowledged comprehensive plan, 'needed housing' also means:

"(a)   Housing that includes, but is not limited to, attached and detached single-family housing and multiple family housing for both owner and renter occupancy;

"(b)   Government assisted housing;

"(c)   Mobile home or manufactured dwelling parks as provided in ORS 197.475 to 197.490; and

"(d)   Manufactured homes on individual lots planned and zoned for single-family residential use that are in addition to lots within designated manufactured dwelling subdivisions.

"(2)   *Subsection (1)(a)* and (d) of this section shall not apply to:

"(a)   *A city with a population of less than 2,500.*

"(b)   A county with a population of less than 15,000."

(Emphasis added.)

In light of that statutory context, before LUBA, respondent contended, among other things, that the city misinterpreted ORS 197.303(2)(a) so as to except it from the "clear and objective" approval standards for "needed housing" determinations that are required under ORS 197.307(6). Specifically, respondent reasoned that

> "[t]he structure of [ORS 197.303] features two bases for determining what is needed housing. The first sentence of subsection (1) looks to the comprehensive plan to determine what housing is 'needed.' The second sentence of subsection (1) adds a list of housing types that are 'needed,' and that list is triggered effective with the first periodic review. Subsection (2) provides the escape hatch that the city is invoking. That escape hatch for small cities, however, does not negate the first sentence."

In other words, respondent contended that, because the city's comprehensive plan identified single-family housing as "needed housing" and because respondent had sought approval for such housing (*i.e.*, a 20-lot subdivision), the first sentence of ORS 197.303(1) applied and the exception for small cities in ORS 197.303(2)(a), which applies only to housing types identified in the statutory list, did not. For that reason, according to respondent, the city was required to apply "clear and objective" standards under ORS 197.307(6).

The city disagreed. Relying on our decision in *City of Happy Valley v. LCDC*, 66 Or App 795, 677 P2d 43 (1984) (*Happy Valley*), the city contended that "cities with a population of less than 2,500 were exempted from the first sentence of ORS 197.303(1) when the statute was first enacted under Oregon Laws 1981, chapter 884, section 6." Invoking the principle of statutory interpretation that prior versions of a statute provide context for interpreting the version at issue in a particular case, the city essentially contended that, because the text of the first sentence of ORS 197.303(1) had not changed since it had been originally enacted in 1981, cities with a population of less than 2,500 continued to be excepted such that "clear and objective" standards for "needed housing" did not apply. Alternatively, the city contended that, even assuming that the first sentence of ORS 197.303(1) applied to cities with a population of less than 2,500, the city had already completed its first periodic review

of its comprehensive plan; thus, "that sentence no longer applied for purposes of [respondent's] application."

LUBA agreed with the city's interpretation of the statute. Specifically, LUBA concluded that we rejected respondent's proposed interpretation in *Shelter Resources, Inc. v. City of Cannon Beach*, 129 Or App 433, 879 P2d 1313 (1994) (*Shelter Resources*), and that, based on that decision, "the city correctly interpreted ORS 197.303." Ultimately, LUBA remanded the city's decision.

In his cross-petition for judicial review, with regard to the "needed housing" issue, respondent essentially renews the contentions that he raised to LUBA. The city does the same. Accordingly, we turn to the issue of statutory interpretation that is squarely raised by the parties' contentions—that is, whether ORS 197.303(2)(a) excepts the city from the application of the "clear and objective" standards required by ORS 197.307(6) when its comprehensive plan identifies single-family housing as "needed housing."

■  In resolving that issue, we are guided by the principles of interpretation described in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), as amplified in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). In sum, "we attempt to determine the meaning of the statute most likely intended by the legislature, examining the text in context along with any legislative history offered by the parties and, if necessary, relevant canons of construction." *Friends of Yamhill County v. Yamhill County*, 229 Or App 188, 192, 211 P3d 297 (2009). Changes in the text of a statute over time are context for interpreting the version at issue in a given case. *See Krieger v. Just*, 319 Or 328, 336, 876 P2d 754 (1994) ("In a serially amended statute * * *, the wording changes adopted from session to session are a part of [the] context of the present version of the statute being construed.").

In this case, because the parties' competing interpretations of ORS 197.303 are predicated on the statute as enacted in 1981 and its subsequent evolution to its current form, we describe that evolution in some detail. As originally enacted, ORS 197.303 (1981) provided, in part:

"(1)    As used in ORS 197.307, until the beginning of the first periodic review of a local government's acknowledged comprehensive plan, 'needed housing' means housing types determined to meet the need shown for housing within an urban growth boundary at particular price ranges and rent levels. On and after the beginning of the first periodic review of a local government's acknowledged comprehensive plan, 'needed housing' also means housing that includes, but is not limited to, attached and detached single-family housing and multiple family housing for both owner and renter occupancy and manufactured homes, as defined in ORS 197.295, located in either mobile home parks or subdivisions.

"(2)    Subsection (1) of this section shall not apply to:

"(a)    A city with a population of less than 2,500."

Significantly, the 1981 version of the statute unambiguously provided that, on and after the first periodic review of a local government's acknowledged comprehensive plan, "needed housing" consisted of both (a) those housing types identified as such in the plan *and* (b) particular housing types (*i.e.*, single- and multiple-family housing, certain manufactured homes) that were considered "needed housing" by operation of law. Moreover, the exception in ORS 197.303(2)(a) (1981) for a city with a population of less than 2,500 applied to "needed housing" as defined in ORS 197.303(1) (1981)— that is, the exception applied not only to housing types identified as "needed housing" in the comprehensive plan (*i.e.*, the first sentence of ORS 197.303(1) (1981)), but also to those housing types particularly identified as "needed housing" in the statute (*i.e.*, the second sentence).

Our decision in *Happy Valley* is consistent with that understanding of the 1981 version of the statute.[2] In that case, we reviewed the legislative history concerning ORS 197.303 (1981) and ORS 197.307 (1981) and noted that "it seems reasonably clear that at least one purpose of ORS 197.303(2)(a) and (b) [(1981)] is to impose a lesser requirement on the smaller cities and counties * * * to meet specific housing needs." *Happy Valley*, 66 Or App at 801. Accordingly,

---

[2] Although we issued our decision in *Happy Valley* in 1984, it was predicated on the 1981 versions of the statutes, which applied to the order on review.

we held that ORS 197.303(2)(a) (1981) excepted small cities from the application of the definition of "needed housing" in ORS 197.303(1) (1981) and that the provisions of ORS 197.307 (1981) that directly relate to that definition are similarly inapplicable to small cities. *Id.* at 800-01.

Although we applied the 1981 versions of the statutes in *Happy Valley*, the legislature had previously amended them in 1983 before we issued our decision in that case. Or Laws 1983, ch 795, § 2.[3] Those amendments significantly changed the structure of ORS 197.303(1) and the scope of the exception for small cities in ORS 197.303(2)(a). More particularly, in 1983, the legislature changed the structure of the second sentence of subsection (1) by creating a statutory list identifying, in separate paragraphs, each particular housing type that was considered "needed housing" as a matter of law. Further and significantly, the legislature amended the exception for small cities in subsection (2) so that it no longer applied to the entire definition of "needed housing" in subsection (1). Instead, the legislature identified certain types of housing in that statutory list to which the exception applied.[4]

---

[3] Oregon Laws 1983, chapter 795, section 2, provided, in part:

"ORS 197.303 is amended to read: 197.303. (1) As used in ORS 197.307, until the beginning of the first periodic review of a local government's acknowledged comprehensive plan, 'needed housing' means housing types determined to meet the need shown for housing within an urban growth boundary at particular price ranges and rent levels. On and after the beginning of the first periodic review of a local government's acknowledged comprehensive plan, 'needed housing' also means:

"**(a)** Housing that includes, but is not limited to, attached and detached single-family housing and multiple family housing for both owner and renter occupancy **and manufactured homes; and**[, *as defined in ORS 197.295, located in either mobile home parks or subdivisions.*]

"**(b) Government assisted housing.**

"(2) **Paragraph (a) of** subsection (1) of this section shall not apply to:

"(a) A city with a population of less than 2,500."

(Deleted text in brackets and italics; new text in boldface.)

[4] The legislature further amended ORS 197.303 in 1989 to add new types of "needed housing" to the statutory list. Specifically, Oregon Laws 1989, chapter 380, section 1, provided, in part:

"ORS 197.303 is amended to read: 197.303. (1) As used in ORS 197.307, until the beginning of the first periodic review of a local government's acknowledged comprehensive plan, 'needed housing' means housing types determined to meet the need shown for housing within an urban growth boundary at

In light of those structural and textual changes to ORS 197.303, we return to the narrow interpretive issue in this case—that is, whether ORS 197.303(2)(a) excepts the city from the application of the "clear and objective" standards required by ORS 197.307(6) when its comprehensive plan identifies single-family housing as "needed housing." In other words, we must determine whether ORS 197.303(2)(a) excepts the city from the first sentence of the definition of "needed housing" in subsection (1). For the reasons that we will explain, we conclude that it does not.

Although the city is correct that the text of the first sentence of subsection (1) has not been amended since 1981, in light of the structural changes to the statute effectuated by the 1983 amendments, we disagree with the city that the current version of the statute has the same meaning that it did in 1981. Instead, we agree with respondent that,

"[i]f, as in Dunes City, the comprehensive plan expressly identifies single family housing as needed, then the city has opted into the needed housing statutory requirement for clear and objective standards for single family housing even though, by statute, it was excluded from the statutory list that otherwise identifies single family housing as needed housing. Because the city made the express policy choice to identify single family housing as needed housing in its comprehensive plan, the statutory requirements related to needed housing, such as the requirement for clear and objective standards, apply to single family housing in Dunes City."

---

particular price ranges and rent levels. On and after the beginning of the first periodic review of a local government's acknowledged comprehensive plan, 'needed housing' also means:

"(a) Housing that includes, but is not limited to, attached and detached single-family housing and multiple family housing for both owner and renter occupancy; [*and manufactured homes; and*]

"(b) Government assisted housing;[.]

"(c) **Mobile home parks as provided in ORS 197.475 to 197.490; and**

"(d) **Manufactured homes on individual lots planned and zoned for single-family residential use that are in addition to lots within designated manufactured home subdivisions.**

"(2) [*Paragraph*] **Paragraphs** (a) **and** (d) of subsection (1) of this section shall not apply to:

"(a) A city with a population of less than 2,500."

(Deleted text in brackets and italics; new text in boldface.)

Respondent's interpretation of ORS 197.303 is the proper one for three interrelated reasons:

*First*, the structure of ORS 197.303(1) demonstrates that the definition of "needed housing" consists of two independent parts, each of which is expressed in a separate sentence of subsection (1). The first sentence defines "needed housing" as those housing types identified as such in the comprehensive plan. The second sentence defines "needed housing" to also include, on and after the beginning of the first periodic review, particular housing types identified in the statutory list. Thus, it is clear from the structure of ORS 197.303(1) that that statutory list is a component of only one part of the definition of "needed housing"—that is, the second sentence of subsection (1).

*Second*, the 1983 amendments evince a legislative intent to limit the scope of the small city exception in ORS 197.303(2)(a). That is so because, as originally enacted, the exception applied to the entire definition of "needed housing" in ORS 197.303(1). As previously described, however, the amendments expressly limited the scope of the exception by referring to only particular housing types identified in the statutory list.

*Third*, interpreting ORS 197.303(2)(a) to apply to all housing types identified in a local government's comprehensive plan as "needed housing" effectively nullifies the legislature's intention that the exception does not apply to small cities when government assisted housing, ORS 197.303(1)(b), and certain mobile home or manufactured dwelling parks, ORS 197.303(1)(c), are at issue. That is so because, if one of those housing types were identified as "needed housing" in a small city's comprehensive plan, the exception would apply and the city would not have to use "clear and objective" standards as required by ORS 197.307(6).[5]

■      For those reasons, we conclude that the exception in ORS 197.303(2)(a) necessarily refers to the particular

---

[5] We note that, in this case, the parties offered no pertinent legislative history for our consideration. Additionally, at oral argument, respondent's counsel indicated that no pertinent legislative history exists concerning the structural changes to the statute in 1983 and 1989.

housing types identified in the statutory list contained in the second sentence of subsection (1). Stated differently, we conclude that the exception does not apply to the first sentence of subsection (1) so as to except all types of housing identified as "needed housing" in a small city's comprehensive plan.

LUBA, however, reached a contrary conclusion, relying on our decision in *Shelter Resources*. In that case, which was decided in 1994 after the pertinent amendments to ORS 197.303, the issues on review generally concerned the application of ORS 197.303 and ORS 197.307 to small cities.

One of the petitioners in that case contended that

"LUBA erred by construing ORS 197.303(2) and the corresponding language in Goal 10 as making *all* of the 'needed housing' provisions in the statutes and the goal inapplicable to the small cities. [The petitioner] asserts that subsection (2) excludes the application only of paragraphs (a) and (d) of subsection (1) to those cities. According to [the petitioner], the proposed project here is for 'government assisted housing' and, as such, it comes within ORS 197.303(1)(b), which is not made inapplicable to the city by ORS 197.303(2)."

*Shelter Resources*, 129 Or App at 438 (emphasis in original). Significantly, we agreed that the petitioner's "reading of the statute is correct" but ultimately rejected his contention that LUBA erred because "the city did not find that this was 'government assisted housing.' " *Id.*

The other petitioner in *Shelter Resources* raised a different but related contention. That petitioner contended that, in *Happy Valley*, we held "that 'even small cities exempted from certain "needed housing" requirements by ORS 197.303 are still subject to the demands of ORS 197.307,' and are 'only exempt from the demands of ORS 197.303(1).' " *Shelter Resources*, 129 Or App at 440. We rejected that contention, explaining that "we understand [*Happy Valley*] to also hold that the provisions in ORS 197.307 that relate directly to 'needed housing,' as defined in ORS 197.303(1), are made inapplicable by ORS 197.303(2) to cities with populations under 2,500." *Shelter Resources*, 129 Or App at 440.

However, in making that statement in *Shelter Resources*, we were not presented with the issue raised by respondent in this case—that is, whether the structural changes to ORS 197.303 affected the statute's meaning. Indeed, we expressly noted:

> "The version of ORS 197.303(2) that we applied in [*Happy Valley*] made ORS 197.303(1) inapplicable in its entirety to small cities, while the current version of subsection (2), quoted earlier in the text, makes only certain paragraphs of subsection (1) inapplicable. However, [the petitioner] does not contend that that difference affects the issues in this case."

*Shelter Resources*, 129 Or App at 440 n 3. In other words, we simply did not decide the interpretive issue presented in this case. Accordingly, our decision in *Shelter Resources* is not controlling here.

In sum, ORS 197.303(2)(a) does not except the city from the application of the "clear and objective" standards required by ORS 197.307(6) when its comprehensive plan identifies single-family housing as "needed housing." Accordingly, we reverse and remand.

On petition, affirmed; on cross-petition, reversed and remanded.