Submitted March 4, 2011, affirmed August 8, petition for review denied
December 27, 2012 (353 Or 127)

Robert J. ERICSSON
and Teresa Ericsson Ridgeway,
*Petitioners-Appellants,*

*v.*

STATE OF OREGON,
by and through the
Department of Land Conservation and Development,
*Respondent-Respondent.*

Washington County Circuit Court
C096522CV; A145698

285 P3d 722

Robert J. Ericsson and Teresa Ericsson Ridgeway filed the briefs *pro se*.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Stephanie L. Striffler, Senior Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Brewer, Judge, and Sercombe, Judge.

SERCOMBE, J.

### SERCOMBE, J.

Petitioners appeal a judgment affirming an order of the Department of Land Conservation and Development (DLCD or department) that denied relief to petitioners under section 6 of Measure 49 (2007).[1] Petitioners obtained land use regulation waivers from DLCD under Measure 37 (2004) in order to facilitate residential development of two adjacent lots in rural Washington County.[2] Measure 49 repealed Measure 37 waiver remedies, replacing them with various processes to obtain state approvals for "home sites" on the affected properties. DLCD denied petitioners' application for homesite approvals for both lots, concluding that neither lot met a homesite approval standard in section 6(6)(f) of Measure 49 that requires that, "[o]n the claimant's acquisition date, the claimant lawfully was permitted to establish at least the number of lots, parcels or dwellings on the property that are authorized [by Measure 49]." On judicial review, the court affirmed DLCD's order. On appeal, petitioners assert that the court erred in affirming the order and in excluding evidence from the record on review. We affirm for the reasons stated below.

As noted, Measure 49 limits the extent and type of development that can be allowed to a Measure 37 waiver claimant, replacing the full extent of the residential uses permitted at the time the owner acquired the property—the compensation allowed under Measure 37—with a limited number of homesite approvals. *See generally Corey v. DLCD*, 344 Or 457, 184 P3d 1109 (2008) (describing the purpose and effect of Measure 49).

---

[1] Measure 49 was amended by Oregon Laws 2009, chapter 855, and Oregon Laws 2010, chapter 8. Those amendments did not change the parts of Measure 49 that are relevant to the disposition of this case. References to "Measure 49" in this opinion are to the original version in effect that is compiled as a note following ORS 195.305 in the 2009 compilation of the Oregon Revised Statutes unless otherwise noted. When citing Measure 49, for ease of reference, we refer only to the section number.

[2] Under Measure 37, public entities that enacted or enforced land use regulations that adversely affected the value of property were required to either pay just compensation or waive application of the offending regulations. *See Corey v. DLCD*, 344 Or 457, 460-61, 184 P3d 1109 (2008) (describing effect of Measure 37).

Petitioners' claim arose under section 6 of Measure 49, which provides that a qualifying Measure 37 claimant is "eligible for [up to] three home site approvals on the property if the requirements of this section and * * * [s]ections 8 and 11 * * * are met." § 6(1)(a). "Home site approval" means "approval of the subdivision or partition of property or approval of the establishment of a dwelling on property." ORS 195.300(12).[3]

To qualify for homesite approvals under section 6, a property owner is required to show a timely claim under Measure 37 and establish satisfaction of the substantive criteria of section 6(6) of Measure 49, including a showing that, "[o]n the claimant's acquisition date, the claimant *lawfully was permitted to establish* at least the number of lots, parcels or dwellings on the property that are authorized under this section." (Emphasis added.)[4] The dispute in this

---

[3] Section 8 describes the process for obtaining homesite approvals under either section 6 or section 7. It requires DLCD to provide notice to certain Measure 37 claimants, including those who filed a claim that had been "approved by the state" for property outside of an urban growth boundary. § 8(1)(b). The notice provision requires DLCD to "[i]dentify any information that the claimant must file" and "[p]rovide a form for the claimant's use" in making an application for relief under Measure 49. § 8(2). A claimant must file the form requesting relief under section 6 or section 7 within 120 days of the notice, together with "any information required in the notice." § 8(3). Section 8(4) requires DLCD to

"review the department's record on the claim, the form required under subsection (3) of this section, any new material from the claimant and any other information required by ORS 195.305 to 195.336 and sections 5 to 11, chapter 424, Oregon Laws 2007, to ensure that the requirements of this section and section 6 or 7, chapter 424, Oregon Laws 2007, are met."

Section 8(7) requires DLCD to

"either deny the claim or approve the claim. If the order or decision approves the claim, the order or decision must state the number of home site approvals issued for the property and may contain other terms that are necessary to ensure that the use of the property is lawful."

Homesite approval by the state does not obviate the need to obtain local approvals necessary to divide the property or establish a dwelling. § 11(1).

[4] Section 6(6) provides that,

"[t]o qualify for a home site approval under this section, the claimant must have filed a claim for the property with both the state and the county in which the property is located. In addition, regardless of whether a waiver was issued by the state or the county before December 6, 2007, to qualify for a home site approval under this section the claimant must establish that:

"(a) The claimant is an owner of the property;

"(b) All owners of the property have consented in writing to the claim;

case is whether petitioners made that showing as part of their Measure 49 claim. That dispute arose in the following factual context as described in the DLCD order and the administrative record.

Petitioners own tax lots 101 and 200 in rural Washington County. The adjacent lots are zoned for agricultural and forestry uses. Petitioners acquired tax lot 101 on April 1, 1986. At that time, the 120-acre lot was zoned Exclusive Forest and Conservation (EFC) under the acknowledged Washington County Community Development Code (CDC). In 1989, petitioners constructed a dwelling on the lot; the dwelling had been approved in 1985 as related to forestry use of the lot.

Petitioners acquired tax lot 200, an adjacent 10-acre lot, by deed on February 12, 1990, at a time when the property was zoned Agricultural and Forest (AF-10). Subsequently, petitioners obtained approval for and ultimately constructed a forestry-related dwelling on that lot as well. In 1993, shortly after acquiring tax lot 200, petitioners were denied a requested plan and zone change from AF-10 to AF-5, a zone change that would have allowed division of the tract into additional lots. Petitioners sought review of the denial from the Land Use Board of Appeals, which upheld the county action. *Ericsson v. Washington County*, 26 Or LUBA 169 (1993).

Soon after the adoption of Measure 37, petitioners filed claims for compensation for both lots with the state and county. Petitioners claimed compensation for tax lot 101 because post-acquisition land use regulations—at both the state and county levels—might have prevented them from dividing the property into five parcels, building three more

---

"(c) The property is located entirely outside any urban growth boundary and entirely outside the boundaries of any city;

"(d) One or more land use regulations prohibit establishing the lot, parcel or dwelling;

"(e) The establishment of the lot, parcel or dwelling is not prohibited by a land use regulation described in ORS 195.305(3); and

"(f) On the claimant's acquisition date, the claimant lawfully was permitted to establish at least the number of lots, parcels or dwellings on the property that are authorized under this section."

forest dwellings, and legitimizing a temporary mobile home use. Similarly, petitioners claimed that changes to state and local law prevented them from rezoning tax lot 200 to AF-5 zoning, dividing that lot into three parcels, and building two more farm dwellings on the resulting parcels.

DLCD issued Measure 37 waivers for both properties. The department concluded that, since it was "possible that [tax lot 101] could have been divided and dwellings sited under the [state] provisions in effect at the time of purchase," and the property "could have potentially been divided into some parcels" under the county laws, "it is more likely than not that there has been some reduction in the fair market value of the property." Similarly, the department determined that "it is more likely than not that there has been some reduction in the fair market value of [tax lot 200] as a result of land use regulations enforced by the Commission or the department." Washington County had not acted on the Measure 37 waiver requests by the time of the adoption of Measure 49.

In March 2008, following the adoption of Measure 49, petitioners sought approval of three parcels and homesites for each of the lots pursuant to section 6. They submitted information and arguments about the effect of county zoning at the time that they acquired each lot. DLCD concluded in a preliminary evaluation of their claims that "it appears that the claimants are not eligible for any relief under Measure 49 because the claimants would not have been lawfully permitted to establish any additional home sites when they acquired the property." Petitioners filed further argument, contending that the zoning law at the time of the acquisitions allowed additional homesites on each property (beyond the single residence earlier approved for each lot), specifically through a partitioning process to allow a forest use for tax lot 101 and an administrative zone change process for tax lot 200. Ultimately, DLCD concluded in its final order that no relief arose under section 6 of Measure 49:

"On April 1, 1986, tax lot 101 of the Measure 37 claim property was subject to Washington County's acknowledged Exclusive Forest and Conservation (EFC) zone. Washington County's EFC zone required 76 acres for the creation of a

new lot or parcel on which a dwelling could be established. Tax lot 101 of the claimants' property consists of 120 acres and is developed with one dwelling. Therefore, the claimants lawfully could not have established any additional home sites on their date of acquisition.

"On February 2, 1990, [tax lot 200 of] the Measure 37 claim property was subject to Washington County's acknowledged Agriculture and Forest (AF-10) zone. Washington County's AF-10 zone required 8 acres for the creation of a new lot or parcel on which a dwelling could be established. The claimants' property consists of 10 acres and is developed with one dwelling. Therefore, the claimants lawfully could not have established any additional home sites on their date of acquisition."

The final order recognized that

"[t]he claimants submitted comments asserting that[,] because processes under which the claimants could have attempted to obtain authorization for additional lots or parcels and dwellings existed on their acquisition dates, the department should authorize such lots, parcel[s] or dwellings under Measure 49. The department disagrees with the claimants' interpretation of the 'lawfully permitted' criterion in Measure 49."

ORS 195.318(1) provides that judicial review of a DLCD final order under Measure 49 is "under ORS 183.484," a statute that pertains to circuit court review of a state agency order that is not a contested case order. Petitioners pursued that remedy, claiming in their petition for review that "DLCD is incorrect in its interpretation of the phrase 'lawfully [was] permitted to establish . . .' found in Measure 49 Section 6(6)(f) as that provision relates to the subject properties as stated in its Final Order." They requested that the final order "be reversed" and that the court grant them "one or more additional homesites."

ORS 195.318(3), a part of Measure 49, limits circuit court review of a Measure 49 final order under ORS 183.484 in two important ways. That statute provides that

"judicial review of a final determination under [Measure 49] is:

"(a)   Limited to the evidence in the record of the public entity at the time of its final determination.

"(b)   Available only for issues that are raised before the public entity with sufficient specificity to afford the public entity an opportunity to respond."

Before the circuit court, petitioners contended that DLCD erred in its interpretation of Measure 49. They argued that the phrase "lawfully was permitted to establish" a dwelling in section 6(6) means that the applicable zoning code did not prohibit the use. Because additional homesites were not prohibited for their tax lots, petitioners argued that they were entitled to homesite approvals as a matter of law. Petitioners also claimed that, if evidence was necessary to prove zoning compliance, then the administrative record contained that proof. Petitioners sought to introduce evidence of DLCD's orders in other Measure 49 proceedings. Those orders purported to qualify property for homesite approval if the homesites were not "prohibited" by the acquisition zone. Petitioners also introduced judicial, legislative, and administrative records of related matters.

Relying upon ORS 195.318(3)(a), the court denied admission of any evidence that was not part of the administrative record. The court ruled that additional residential development was not lawfully permitted on tax lot 200: "I don't think it's even close. I mean, it[ ] couldn't even be re-zoned from AF10 to AF5 when they tried, so that's, to me that's not even close." The court also agreed with the state that petitioners failed to prove that the standards for partitioning tax lot 101 would have been satisfied.

Petitioners appeal from the judgment affirming the DLCD final order. On appeal, petitioners reprise the arguments made to the trial court. First, petitioners contend that they were "lawfully * * * permitted to establish * * * lots [and] dwellings" on both tax lots because the zoning laws at the time of their acquisitions would allow further partition of the lots and forestry-related dwellings if certain approvals were obtained. Specifically, petitioners assert that, for tax lot 101, the 1985 Washington County CDC 424-4 allowed partition of EFC-zoned land into forestry-related parcels of less than 76 acres based on a showing of "compelling

evidence" that certain standards were satisfied.[5] As to tax lot 200, petitioners claim that a plan/zone change from AF-10 to AF-5 was allowed in 1990 as a "routine administrative process." In their view, with a change in zoning, CDC 404-5.4 (1990) would have allowed three dwellings on tax lot 200 as part of a planned unit development. Petitioners conclude that DLCD erred in determining that those laws did not permit them to establish dwellings and lots on the properties.

Second, petitioners contend that, if the mere existence of development options under the code is insufficient to show that they were "lawfully * * * permitted to establish" dwellings, then DLCD erred in not concluding that the county would have granted those development rights to petitioners. They argue that evidence in the administrative record established that the county would have granted a

---

[5] Petitioners contend that they purchased tax lot 101 on April 10, 1985, through a land sale contract. In its order, DLCD determined that the date of ownership, for purposes of Measure 49, was April 1, 1986, the date the property was conveyed to petitioners by deed. That finding was not contested in the petition for review. At that time, CDC 424-4 provided:

"Creation of Forest Related Parcels Eligible for a Forest Related Dwelling on less than Seventy-Six (76) acres.

"No new forest related lot or parcel shall be created less than seventy-six (76) acres in size unless there is compelling evidence which demonstrates:

"424-4.1 The proposed forest use on such a parcel cannot be economically established on an existing available lot within the Rural/Natural Resource area;

"424-4.2 The proposed lot area is compatible with forest uses in the area and does not interfere with forest practices as defined and regulated under ORS 527.610 to 527.730;

"424-4.3 The proposed lot area is consistent with ORS 527.630(1);

"424-4.4 The proposed lot area does not materially alter the stability of the overall land use pattern in the area:

"The proposed lot(s) or parcel(s) are of sufficient size to ensure:

"A. The best forestry utilization of the land;

"B. Forest practices may take place in an economic manner; and

"C. That forest uses will be the primary use on such lands.

"424-4.5 That the creation of the parcel will not seriously interfere with adjacent farm uses;

"424-4.6 The proposed lot(s) or parcel(s) will not interfere with the preservation of fish and wildlife areas and habitats identified in the Washington County Comprehensive Plan, or how the interference can be mitigated."

(Underscoring in original.)

land division on tax lot 101 and a zone change for tax lot 200. Petitioners assert that DLCD admitted as much in granting Measure 37 waivers for each property, thereby establishing that post-acquisition land use regulations inhibited residential development (obtained through land divisions) and lowered the properties' values, and that this "admission" should be preclusive in the Measure 49 proceeding. To whatever extent the administrative record is insufficient to prove likely land use approvals, petitioners argue that DLCD is estopped to so argue, because its director promised petitioners in a letter initiating the Measure 49 process that DLCD staff "will work with [petitioners] to ensure [petitioners'] claim is complete and accurate" and then did not do so. Petitioners further assert that the review process in the circuit court is unconstitutional under the Due Process Clause of the Fourteenth Amendment to the United States Constitution because it prevents them from making a full record of their land use claims. Finally, petitioners contend that the reviewing court erred in failing to admit certain evidence in the proceedings and to take judicial notice of certain DLCD Measure 49 orders.

The department responds that, in order to prove that a claimant "lawfully was permitted" to establish dwellings or lots at the time of acquisition, a Measure 49 claimant must show that, "at the time the claimant acquired the property, the claimant was actually permitted to establish the use, based on then-existing standards applied to the condition of the property as it existed when the prior law was in effect." It is insufficient, according to the department, to show that the tax lots *might have* been developed under the law or if the law or conditions changed. Instead, a claimant must present sufficient evidence to show that the homesite uses *would have* been allowed at the time the property was acquired. The department asserts that petitioners made no such showing for either tax lot and that, accordingly, the trial court did not err in affirming that order.

As to petitioners' remaining contentions, the department contends that (1) the findings in the state Measure 37 waivers on the effects of state land use laws are not relevant to the Measure 49 determinations on the

application of county zoning when the properties were acquired; (2) the only process due to claimants was the process required by Measure 49; (3) the reviewing court did not err in refusing to take judicial notice of DLCD orders and any error was harmless because the orders were not shown to be inconsistent with the order under review; (4) the director's letter creates no estoppel; and (5) the court properly excluded new evidence under ORS 195.318. We generally agree with the state's contentions.

Our standard of review echoes that of the reviewing court. Under ORS 183.484(5)(a), a reviewing court can "affirm, reverse or remand the order." If the court finds that the agency "erroneously interpreted a provision of law and that a correct interpretation compels a particular action," it may "[s]et aside or modify the order" or remand it "to the agency for further action under a correct interpretation of the provision of law." ORS 183.484(5)(a)(B). Remand is required if the agency's exercise of discretion is "[o]utside the range of discretion delegated to the agency by law;" inconsistent with an agency rule, official position, or practice, "if the inconsistency is not explained by the agency"; or "[o]therwise in violation of a constitutional or statutory provision." ORS 183.484(5)(b). Finally, the court may set aside or remand the order if it is not supported by substantial evidence. ORS 183.484(5)(c). On review, this court reviews the circuit court judgment to determine whether it correctly assessed the agency's decision under those standards. *G.A.S.P. v. Environmental Quality Commission*, 198 Or App 182, 187, 108 P3d 95, *rev den*, 339 Or 230 (2005). For the most part, that means that the court directly reviews the agency's order under the standards set out in ORS 183.484(5). *Id.* ("In practical effect, * * * we directly review the agency's order for compliance with the standards set out in ORS 183.484(5)."); *see also Hoekstre v. DLCD*, 249 Or App 626, 634, 278 P3d 123 (2012) (applying that standard of review in an appeal of a Measure 49 reviewing court order).

We first address the primary issue before us— the meaning of section 6(6)(f) of Measure 49. Again, that provision specifies that "to qualify for a home site approval under this section the claimant must establish that: * * *

[o]n the claimant's acquisition date, the claimant lawfully was permitted to establish at least the number of lots, parcels or dwellings on the property that are authorized under this section." We discern the meaning of the phrase "lawfully was permitted to establish" from the text, context, and useful legislative history of the provision. *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). Because Measure 49 was a referred measure, the legislative history is the record of its popular adoption, including the ballot title and explanatory statement in the voters' pamphlet. *Hoekstre*, 249 Or App at 634.

Beginning with the text, the statute requires a claimant to "establish" the status of the property as it pertains to applicable law (what "lawfully was permitted to [be] establish[ed]") "[o]n the claimant's acquisition date." In that context, the plain meaning of "establish" is

"[6] b : to prove or make acceptable beyond a reasonable doubt * * * c : to provide strong evidence for : bring unavoidably to the attention * * * d : to calculate or determine exactly and with certainty the terms, limits, or identity of * * * e : to provide the mind or comprehension with appropriate information about * * *."

*Webster's Third New Int'l Dictionary* 778 (unabridged ed 2002). Thus, section 6(6) requires a claimant to prove, by providing strong evidence, the factors listed in the subsection "to qualify for a home site approval" by DLCD. That proof is evaluated by the department in order to make a determination of the claim:

"In addition to reviewing the claim, the department shall review the department's record on the claim, the form required under subsection (3) of this section, *any new material from the claimant* and any other information required by ORS 195.305 to 195.336 and sections 5 to 11, chapter 424, Oregon Laws 2007, *to ensure that the requirements of this section and section 6 or 7, chapter 424, Oregon Laws 2007, are met.*"

§ 8(4) (emphasis added).

The nature of that proof is the crux of the case. "Establish," as used in the phrase "establish * * * lots, parcels

or dwellings," has a different contextual meaning than the meaning of "establish" when referring to the qualifications necessary for homesite approvals. As distinguished from that meaning, establishing a lot or dwelling likely means "4 a : to bring into existence, create, make, start, originate, found, or build usu. as permanent or with permanence in view <[establish] a factory on the banks of the river>." *Webster's* at 778. Thus, a claimant must prove, by sufficient evidence in the DLCD administrative record of the section 6 claim, that the claimant "lawfully was permitted" to create lots or construct dwellings on the affected property as of "the claimant's acquisition date."

Petitioners construe "lawfully was permitted" to mean "potentially allowed by law," in the sense that lot or dwelling approval processes were available under the applicable zoning—without regard to whether those approvals would have been given. Petitioners reason that this type of analysis—requiring only a facial analysis of the past zoning law as opposed to a more deliberative and complex application of that law—is more consistent with the expedited notice and comment process under section 8 of Measure 49 and is the more likely standard intended by the voters.

DLCD, on the other hand, argues that "lawfully was permitted" means that the property actually qualified for additional lots or dwellings at the time of its purchase, *i.e.*, that permission to establish lots or dwellings would have been given by due course of applicable law. It relies upon the dictionary definition of "permit" as "1 : to consent to expressly or formally : grant leave for or the privilege of : ALLOW, TOLERATE <[permit] smoking> <[permit] an appeal> <[permit] access to records>." *Webster's* at 1683. We note that *Webster's* further defines "permit" to mean "4 : to make possible * * * to give an opportunity." *Id.*

The context of the phrase "lawfully was permitted" rules out an intended meaning of "having secured all formal consents." Section 6(8) recognizes that, after obtaining DLCD homesite approval, a Measure 49 claimant "may seek other governmental authorizations required by law for the partition or subdivision of the property or for the development of any dwelling authorized." *See also* § 11(1)

(requiring an authorized subdivision, partition, or dwelling to "comply with all applicable standards governing the siting or development of the dwelling, lot or parcel" but cautioning that the standards "not be applied in a manner that has the effect of prohibiting the establishment" of the use unless necessary "to avoid or abate a nuisance, to protect public health or safety or to carry out federal law"). Thus, a Measure 49 claimant need not have obtained those same authorizations or permits by the acquisition date to qualify under section 6(6)(f).

Indeed, the context suggests that "permitted" means "allowed by application of zoning." Measure 49 elsewhere uses the term "permitted" to mean allowed by the applicable zoning. For example, for purposes of past claims under Measure 37 or future claims under Measure 37 as rewritten by Measure 49, the measure defines "waive" or "waiver" to mean the decision to not apply land use regulations "to allow the owner to use property for a use permitted when the owner acquired the property." ORS 195.300(24). As used in that portion of the statute, "permitted" means allowed by application of the acquisition zoning.

However, section 6(6)(f) qualifies "permitted" in this sense, requiring that the claimant be *"lawfully \* \* \* permitted"* to establish the use—something more than being merely allowed in some circumstances. (Emphasis added.) "Lawfully" means "in a lawful manner." *Webster's* at 1279. And "lawful" means "1 a : conformable to law : allowed or permitted by law : enforceable in a court of law : LEGITIMATE b : constituted, authorized, or established by law : RIGHTFUL." *Id.* We construe the phrase "lawfully was permitted," then, to require that the claimant show that the use permission would have been obtained in a lawful manner, *i.e.*, that the permitted lot or dwelling would conform with the legal processes and standards imposed by the acquisition zoning in order to establish the use.

That construction of the text of the phrase is corroborated by further context and the adoption history of the measure. We regularly look to other provisions of a statute as helpful context in interpreting the meaning of a statutory provision. *See Lane County v. LCDC*, 325 Or 569,

578, 942 P2d 278 (1997) ("[W]e do not look at one subsection of a statute in a vacuum; rather, we construe each part together with the other parts in an attempt to produce a harmonious whole."). As a matter of general context, the practical effect of petitioners' argument—that "lawfully was permitted" means potentially allowed as opposed to actually permitted by the applicable zoning—is that a claimant would be entitled to homesite approvals under Measure 49 even if the claimant would not have been granted those rights by operation of the acquisition zoning. That reasoning ascribes an intent to the voters to allow development rights to a claimant beyond that allowed by the acquisition zoning and the claimant's Measure 37 waiver.

The context of other provisions in the measure, however, suggests an intent to restore some development rights available at the time of the property's purchase and to limit the scope of previously allowed Measure 37 waivers. As just noted, Measure 37 allowed a waiver of post-acquisition land use regulations "to allow the owner to use the property for a use permitted at the time the owner acquired the property." *Former* ORS 197.352(8) (2005), *amended by* Or Laws 2007, ch 424, § 4, *renumbered as* ORS 195.305 (2007). The stated purpose of Measure 49 is to abridge (and not expand) that Measure 37 remedy while retaining limitations on development of forestland and farmlands. *See* § 3(2) (2007) (stating that the purpose of the measure is to "modify Ballot Measure 37 (2004) to ensure that Oregon law provides just compensation for unfair burdens while retaining Oregon's protections for farm and forest uses and the state's water resources"). "[S]tatements of general policy * * * can serve as contextual guides to the meaning of particular provisions of the statutes or rules, as much as any other parts of the enactment can." *DLCD v. Jackson County*, 151 Or App 210, 218, 948 P2d 731 (1997), *rev den*, 327 Or 620 (1998) (emphasis omitted).

In addition, the measure makes clear that the Measure 37 development rights (which are actual development rights available by application of the acquisition zoning) operate as a limit on the relief allowed under Measure 49. Section 6(2)(a) limits development under section 6 to the lesser of three dwellings or the "number of

lots, parcels or dwellings described in a [Measure 37] waiver issued by the state." A similar limitation exists under sections 7(2)(a) and 9(2)(a). Thus, it is unlikely that section 6(6)(f) operates to give *more* development rights than would be allowed by application of the acquisition zoning and the Measure 37 waiver to develop under that zoning.[6]

Finally, the history of the enactment of Measure 49 is generally consistent with reading section 6(6)(f) to require proof that a particular development proposal and condition of the property would comply with the acquisition zoning. The explanatory statement of the measure, provided by the 2007 Legislative Assembly, noted that "[c]laimants may build up to three homes if allowed when they acquired their properties. * * * [T]his measure provides that those who choose to apply for up to three homes need only show they had the right to build the homes they are requesting when they acquired their property." Official Voters' Pamphlet, Special Election, Nov 6, 2007, 19 (Explanatory Statement). The described showing of "the right to build the homes they are requesting" suggests proof that a county could not lawfully deny a permit or partition application, rather than proof that the development was a mere possibility based on a facial analysis of the zoning law.

Thus, in light of the text and context of section 6(6)(f), together with the adoption record of the provision, we conclude that, in order to prove that a claimant "lawfully was permitted" to establish dwellings or lots under section 6(6)(f), a claimant must prove by evidence in the DLCD administrative record that it is more likely than not that the claimant would have been actually permitted to establish the use, based on the application of prior law, *i.e.*, the local and state land use regulations in effect at the time of acquisition, to the condition of the property as it existed when the prior law was in effect. We need not decide, given the facts of this case, whether the relevant condition of the

---

[6] Petitioners' argument that simple proof under section 6(6)(f) is implied by the required simple decision-making process of section 8 is undercut by the required application of the section 8 process to the complex proof required by section 7. *See* § 7(1) (allowing homesites "if the requirements of this section and sections 8 and 11 [of Measure 49] are met"). The required use of a section 8 process under Measure 49, then, implies very little about the necessary evidentiary showing under sections 6 or 7 in that process.

property is only the condition on the acquisition date or the condition anytime after that date and before any relevant change to the prior law. Thus, DLCD did not err in failing to grant homesite approvals to petitioners based upon a mere possibility that the dwellings could have been allowed under the prior law.

Nor did the department err in concluding that petitioners did not prove that they were entitled to homesite approvals based on the law in effect at the time of the acquisitions of the properties. Petitioners contend that they could have obtained an "administrative zone change" for tax lot 200, changing its zoning designation in the CDC from AF-10 to AF-5, and that the effect of that zone change would have been to allow additional dwellings on the property. In fact, petitioners sought and were denied that same zoning map amendment and related comprehensive plan diagram changes for tax lot 200 shortly after acquiring the lot. *See Ericsson*, 26 Or LUBA 169. Under the formulation of the meaning of section 6(6)(f) just noted, we view both the zoning and plan designation for the property to be part of the "law," the land use regulations in effect at the time of the property acquisition, that, in turn, governs whether a claimant "lawfully was permitted to establish" dwellings or lots under section 6(6)(f). There is no dispute that claimants could not establish an additional lot or dwelling under the AF-5 acquisition zoning. DLCD was correct, then, in concluding that petitioners could not establish an additional dwelling on the property because of restrictions in the acquisition zoning. Whether the plan/zone designation could be changed later, as petitioners contend, so that different laws would inform whether the use "lawfully was permitted" at a later time, is beside the point. It is the law in effect at the time of acquisition, including the zoning and plan designation, that is probative.

Nor was there sufficient evidence in the administrative record from which DLCD could conclude that it was more likely than not that the county would approve a partitioning of tax lot 101 under CDC 424-4 to allow for an additional forest-related dwelling. That code provision allowed the creation of lots of less than 76 acres if there was "compelling evidence" that various factors were met. 251 Or App at 617

n 5. In order to apply those factors, DLCD would need to know, among other things, (1) the nature of the proposed forest use and the reasons why a smaller lot would facilitate that use; (2) the size of the proposed lot; and (3) the condition of the property, its forest uses, and the nearby forest uses at the time of the property acquisition and thereafter.[7] However, petitioners did not present evidence relating to all of those factors.[8] Based on the record here, the department was correct in concluding that the 120-acre property was subject to a 76-acre minimum lot size requirement and that no further parcelization or different minimum lot size was likely.[9]

Petitioners remaining contentions merit only brief discussion. Petitioners complain that the judicial review process for Measure 49 orders provided by ORS 195.318 is facially unconstitutional under the Due Process Clause. Petitioners assert that they are constitutionally entitled to present evidence in the judicial review proceeding

---

[7] The CDC listed various permitted forest uses at CDC 342-2. Those uses included primary processing of forest products, log scaler, conservation areas, and quarry and gravel pits. Other forest uses were allowed through a notice and comment procedure, CDC 342-3, including utility facilities necessary for public service and transmission towers, and through a contested case process, CDC 342-4, including kennels, hunting preserves, temporary batch plants, and sawmills. Petitioners never identified the reasons why an additional lot of a particular size was necessary in order to facilitate any of those uses.

[8] Petitioners primarily rely upon an October 1985 decision, submitted into the record, that allowed a forest-related dwelling on tax lot 101 and that contained conclusions on the effect of the dwelling on fish and wildlife habitats. That evidence concerned a different forest use than the one that could have been allowed under CDC 424-4 and was largely immaterial to application of the partitioning standards in CDC 424-4.

[9] Petitioners assert that a Measure 37 waiver could be some evidence that a post-acquisition regulation devalued the property by preventing a land use allowed at the time of purchase. In this case, however, there was no county Measure 37 waiver from which any inference could be made about the application of the CDC. The state's Measure 37 waiver orders, which petitioners tout as preclusive of the county Measure 37 issue, generally concerned the effect of post-acquisition state laws, an altogether different question. Both orders waived post-acquisition provisions of Statewide Planning Goal 14, state land use regulations, and state statutes. Both orders expressly did not waive the application of county laws ("any laws enacted or enforced by a public entity other than DLCD"). In the findings on tax lot 101, the department did discuss the "Goal 4 standard in effect in Washington County in 1986" (presumably referring to CDC 424-4) as allowing a possibility of property division. We do not regard that finding as particularly probative, much less determinative, of the issue of how CDC 424-4 would have been applied to the tax lot. For that reason, we need not decide if it is an "admission" by the department for evidentiary purposes, as requested by petitioners.

and that the limitation of the review record to "evidence in the record of the public entity at the time of its final determination" in ORS 195.318(3)(a) is constitutionally infirm. Petitioners made no such argument below, and the claim is not preserved. ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court * * *, provided that the appellate court may consider an error of law apparent on the record.").

We are not asked to consider the error as plain, perhaps because any error is dubious at best. Petitioners do not contend that the process afforded by the department—a process that twice provided notice and an opportunity to be heard in the preliminary and then the final evaluation procedures—violates the Due Process Clause. Assuming that those procedures are all that are due under the constitution, petitioners do not explain why a record supplement in a judicial review proceeding is constitutionally compelled.[10]

Petitioners next contend that the reviewing court erred in not taking judicial notice of a number of DLCD Measure 49 orders. Only one of those orders was submitted to the court. In that order, involving property acquired in 1958, the department determined that section 6(6)(f) was satisfied because the "property was not subject to any local or state laws that would have prohibited the claimant from establishing" the dwellings in question. Petitioners argue that the legal effect of that determination is to require the department to apply that same test to their Measure 49 claim and that, under that test, dwellings were not prohibited by the CDC on either lot.

We need not decide whether judicial notice of agency rulings is allowed under OEC 202(2) as a "[p]ublic

---

[10] Petitioners' reliance upon *Norden v. Water Resources Dept.*, 329 Or 641, 996 P2d 958 (2000), is misplaced. *Norden* determined that a record supplement could occur in judicial review of a noncontested case administrative order because ORS 183.484 allowed that supplement, not because the procedure was due under the federal constitution. After stating the question in that case—whether the "record on judicial review in other than a contested case hearing is * * * limited to the information that the agency had before it when it issued its order"—the court noted that "[t]o answer that question, we must construe ORS 183.484." 329 Or at 645. The court then did just that and nothing more. *Norden* does not promote petitioners' constitutional claim. Nor have petitioners identified any other authority supporting their constitutional contention.

and private official act[ ] of the legislative, executive and judicial departments of this state" or whether that judicial notice is precluded by ORS 195.318(3)(a) because it was not "evidence in the record of the public entity at the time of its final determination." The evidence was properly excluded under ORS 195.318(3)(b). That statute limits judicial review of Measure 49 determinations to "issues raised before the public entity with sufficient specificity to afford the public entity an opportunity to respond." Petitioners did not claim in the administrative proceedings that DLCD was obliged to act consistently with identified past Measure 49 orders. The department was not afforded an opportunity in that proceeding to explain or distinguish its past actions. Because the issue on review—whether the department was bound by prior orders—was not raised in the administrative proceedings and is not cognizable on appeal, any evidence to establish that issue, including judicially noticed facts or law, was immaterial. The trial court did not err in refusing to take judicial notice of the past administrative orders.

We reject without further discussion petitioners' remaining assignments of error. As to those issues, petitioners' contentions are without merit and neither the parties, the bench, nor the bar would benefit from any extended analysis.

Affirmed.