Argued and submitted October 8, 2020, affirmed December 8, 2021

JOSEPHINE COUNTY
and Jackson County,
*Petitioners-Appellants,*

*v.*

PUBLIC EMPLOYEES RETIREMENT BOARD,
the state board of the
Public Employees Retirement System,
*Respondent.*

Marion County Circuit Court
17CV01027; A170263

504 P3d 624

Jackson and Josephine Counties (counties) appeal the trial court's denial of their challenge to the counties' individual employer contribution rates set by the Public Employees Retirement Board (board) for the 2017 to 2019 biennium. Those rates incorporated the outstanding liabilities to the Public Employees Retirement System (PERS) of The Job Council (TJC), an intergovernmental entity that the counties created at some point before 1993 and dissolved in 2015. The counties contend that the trial court erred in determining that the board had statutory authority to collect TJC's outstanding PERS liabilities by using the board's rate-setting power to increase the counties' individual contribution rates. *Held*: The outstanding PERS liabilities of TJC were the liabilities of the counties by operation of ORS 190.080(3) and the board had the authority to collect that liability under ORS 238.225. Accordingly, the board did not err in determining that it could account for the counties' liabilities, inclusive of TJC's outstanding liabilities, through its rate-setting abilities, and the trial court did not err in reaching the same conclusion.

Affirmed.

Sean E. Armstrong, Judge.

Crystal S. Chase argued the cause for appellants. Also on the briefs were Amy Edwards and Stoel Rives LLP.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief was Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

DeVORE, P. J.

Affirmed.

**DeVORE, P. J.**

Jackson and Josephine Counties (counties) appeal the trial court's denial of their challenge to the counties' individual employer rates set by the Public Employees Retirement Board (board) for the 2017 to 2019 biennium.[1] Those rates incorporated the outstanding liabilities to the Public Employees Retirement System (PERS) of The Job Council (TJC), an intergovernmental entity that the counties established at some point before 1993 and dissolved in 2015. We write to address only the counties' third assignment of error. We reject the counties' remaining assignments of error without discussion.

In their third assignment, the counties contend that the trial court erred in determining that the board had statutory authority to collect TJC's outstanding PERS liabilities by using the board's rate-setting power to increase the counties' individual contribution rates. We conclude that TJC's liabilities are the liabilities of the counties by operation of ORS 190.080(3) and that the board had the authority to collect that liability through its broad rate-setting authority in ORS 238.225. Accordingly, we affirm.

On appeal of a trial court's decision on review of an administrative order in an other than contested case, we directly review the agency's order, as relevant here, for errors of law or whether the agency acted outside the range of discretion delegated to it by law. ORS 183.484(5)(a) and (5)(b); *Ericsson v. DLCD*, 251 Or App 610, 620, 285 P3d 722, *rev den*, 353 Or 127 (2012). The facts relevant to our discussion are undisputed.

The counties created the intergovernmental entity, TJC, pursuant to ORS 190.010 at some point before 1993.[2]

---

[1] The board's orders at issue here are orders in other than contested cases. The counties filed a petition for judicial review of those orders under ORS 183.484, which provides, in part:

"Jurisdiction for judicial review of orders other than contested cases is conferred upon the Circuit Court for Marion County and upon the circuit court for the county in which the petitioner resides or has a principal business office."

[2] Under ORS 190.010, "[a] unit of local government may enter into a written agreement with any other unit or units of local government for the performance

The counties' Boards of Commissioners signed the intergovernmental entity agreement (IGA) in 1993. The purpose of TJC was to enhance employment opportunities for citizens of the counties through the planning and implementation of workforce programs, as funded, in part, by the federal Workforce Investment Act.

In May 1998, TJC joined PERS. The "Contract of Integration" between TJC and PERS provided that TJC's employees would receive PERS credit for the length of their employment prior to May 1998. Due to that credit, TJC incurred an unfunded actuarial liability (UAL) in the "low 3 million range" upon joining PERS. Later, when joining the PERS Local Government Rate Pool in 2000, TJC's UAL, then valued at $3,709,000, became its own "transition liability" (PERS liability) that it was responsible for independent of the other employers in the pool. By December 31, 2014, TJC's outstanding PERS liability had grown to $4,676,513.

In December 2014, Jackson County initiated the process to dissolve TJC due to changes in federal funding requirements and TJC's unsustainable PERS liability. Dissolution was to be effective June 30, 2015. Pursuant to its IGA, TJC's executive director, James Fong, served as the liquidating agent responsible for winding down TJC. In April 2015, Fong, on behalf of TJC, sent a letter to PERS to alert it to TJC's pending dissolution. A majority of TJC's employees were hired by ResCare, a national, for-profit entity that took over some of TJC's workforce training activities. At the counties' direction, Fong transferred TJC's assets, including $427,553 in cash, to the Rogue Workforce Partnership, a private nonprofit that subsequently hired Fong and some of TJC's employees. TJC and Fong did not provide for any entity to assume TJC's mounting PERS liability. On June 23, 2015, Fong officially contacted PERS to request that TJC be put on "inactive status."

PERS responded to TJC via letter on June 29, 2015, informing the counties that TJC's PERS liability of $4,738,287 would need to be addressed upon TJC's dissolution. Although, at that time, PERS did not have a formal

---

of any or all functions and activities that a party to the agreement, its officers or agencies, have authority to perform."

policy for collecting outstanding UALs when participating employers dissolved, PERS alerted the counties that its "preference would be to arrive at an agreement with Jackson and Josephine counties in which the counties would assume whatever portion of [TJC's PERS liability] remains after its assets are liquidated." Rather than collect the amount in a lump sum, PERS said that it would prefer to collect TJC's outstanding liability by amortizing the amount as a part of each county's employer contribution rates over several years.

On October 30, 2015, Josephine County told PERS that it had "no interest, intent or ability" to assume any portion of TJC's liability.

On July 18, 2016, the chief administration officer of PERS wrote to the counties to alert them that the board was planning to proceed as outlined in its June 2015 letter. PERS explained that it believed that, by operation of ORS 190.080,[3] which governs intergovernmental entities subject to IGAs, TJC's liability became that of the counties upon its dissolution and could therefore be collected as the counties' liability through the counties' individual contribution rates.

For a few months, the board postponed, at the counties' request, adoption of the counties' 2017 to 2019 employer contribution rates. But, in November 2016, the board accepted PERS staff's recommendation and increased Jackson County's and Josephine County's 2017 to 2019 contribution rates by 0.51% and 1.77% of their respective payrolls to reflect the amortization of TJC's PERS liability (the November 2016 order).

In January 2017, the counties filed a petition for judicial review challenging the board's order. As allowed by ORS 183.484(4), the board notified the trial court that it was withdrawing its November 2016 order for "purposes of reconsideration" to either "affirm, modify or reverse its order." At the recommendation of PERS staff, the board

---

[3] Explained in further detail below, ORS 190.080(3) provides that "[t]he debts, liabilities and obligations of an intergovernmental entity shall be, jointly and severally, the debts, liabilities and obligations of the parties to the intergovernmental agreement that created the entity, unless the agreement specifically provides otherwise."

reaffirmed its November 2016 order and adopted additional grounds for its decision in a June 2018 order. The additional grounds included (1) that the Contingency Reserve, a $25 million emergency fund for insolvent employers under ORS 238.670(1)(a), was not available to cover TJC's liability because TJC did not meet the definition of an "insolvent employer" under OAR 459-009-0400(1) and (2) that the counties were also responsible for the PERS liability as TJC's "successor" as provided by OAR 459-009-0070(12) (November 4, 2005).

The trial court granted the counties a partial summary judgment, concluding that the board had impermissibly applied the insolvent employer rule retroactively to the counties in its June 2018 order and could not rely on that basis to support its rate order. After a trial on the board's remaining justifications, the trial court denied the counties' petition for review. The trial court concluded that the board had authority to set employer contribution rates under ORS 238.225; TJC's liabilities were the liabilities of the counties by operation of ORS 190.080(3); TJC's IGA provided that the counties would be equally responsible; there was substantial evidence to support the board's determination of the PERS liability; and the board properly exercised its discretion to decline use of the contingency reserve in favor of collecting the PERS liability through its rate-setting authority.

In their third assignment of error, the counties argue that the board erred or acted outside the range of its discretion by concluding that it had statutory authority to collect TCJ's PERS liability through the counties' employer contribution rates. As we explain, however, the relevant statutes provided the board straightforward authority to collect the PERS liability through the board's rate-setting power.

The counties created TJC as an intergovernmental entity under ORS 190.010, which provides, in part:

"A unit of local government may enter into a written agreement with any other unit or units of local government for the performance of any or all functions and activities that a party to the agreement, its officers or agencies, have authority to perform."

Unless the intergovernmental agreement (IGA) between the two units of local government provides otherwise,

> "[t]he debts, liabilities and obligations of an intergovernmental entity shall be, jointly and severally, the debts, liabilities and obligations of the parties to the intergovernmental agreement that created the entity."

ORS 190.080(3). Parties to an IGA may, but are not required to, "assume responsibility for specific debts, liabilities or obligations of the intergovernmental entity." ORS 190.080(4).

        Contrary to the counties' view, the plain language of ORS 190.080(3) provides that any debts accrued by an intergovernmental entity "shall be" considered, jointly and severally, the liabilities of the parties who created the entity. By operation of the statute alone, without any further court proceeding, the debts of the intergovernmental entity are the debts of the parties that created the entity. *See Doyle v. City of Medford*, 347 Or 564, 570, 227 P3d 683 (2010) (explaining that "[o]rdinarily, use of the word 'shall' implies that the legislature intended to create an obligation"). In this case then, the debts of TJC, by operation of ORS 190.080(3), are the debts of the counties.

        The counties argue that, even so, the IGA in this case provided that the counties should not be responsible for the debts of TJC at all. The counties point to Article VII, section 2 of the IGA, which provides:

> "Upon any termination of this Agreement, TJC shall pay or make provision for payment of its creditors, including reimbursement to the federal government or other governmental agencies of amounts required to be paid to them upon termination of this Agreement and the liquidation of TJC. Thereafter, the assets remaining shall be distributed equally to the Governments."

The counties argue that, under that provision, "The Job Council is *solely* responsible for any debts or liabilities remaining upon termination of the 2012 IGA." (Emphasis in counties' brief.)

        Contrary to the counties' view, that provision merely directs the TJC to satisfy its debts when dissolving. The

provision does not provide that TJC's debts would remain with TJC, even after its dissolution. It does not resolve the situation, as here, where TJC dissolved without making "provision for payment of its creditors." Even if allowing the counties to abandon TJC's debts would be viable as a way to "specifically provid[e] otherwise" for TJC's debts under ORS 190.080(3), such a notion is contradicted by Article VII, section 1 of the IGA, which provides:

> "Any liability which may accrue to the Governments due to TJC's acts, errors, or omissions or TJC's performance or failure to perform pursuant to the requirements of state or federal law *shall be apportioned among the Governments equally.*"

(Emphasis added.) Therefore, to the extent that specific provisions of the IGA bear on whether the counties are responsible for TJC's liabilities, the IGA does not provide that the counties may absolve themselves of TJC's debts, but that the counties would share any liabilities equally. In short, the debts of TJC, including the PERS liability, are the debts of the counties by operation of statute, and that conclusion is not negated by any provision of the IGA.

The board had the authority to collect that liability by adjusting the counties' employer contribution rates to reflect the amortization of that debt over a period of years. In general, an agency has the power to carry out activities as conferred by its organic legislation as well as such implied power as is necessary to carry out the power that is expressly granted. *Service Employees Int'l Union Local 503 v. DAS*, 183 Or App 594, 606, 54 P3d 1043 (2002). The legislature has expressly granted PERS broad rate-setting authority, providing that,

> "[f]rom time to time, the board shall determine the liabilities of the system and shall set the amount of contributions to be made by participating public employers, and by other public employers who are required to make contributions on behalf of members, to ensure that those liabilities will be funded no more than 40 years after the date on which the determination is made."

ORS 238.225. Further, that authorizing statute provides that employers participating in PERS

> "shall, at intervals designated by [the board], transmit to the board those amounts the board determines to be actuarially necessary to adequately fund the benefits to be provided by the contributions of the employer * * *."

ORS 238.225. Those rate-setting abilities provided by the legislature instruct the board to determine an employer's liabilities and set an employer's contribution rate at a level that ensures that those liabilities are funded within, at least, 40 years after the date such determination is made. That authority gives the board the implied powers necessary to carry out those designated functions.

Under that scheme, the board is expressly instructed to determine the liabilities of each participating employer. That necessarily includes the implied ability to look to other statutes to determine the nature of an employer and assess whether those statutes affect the PERS liability of a participating employer. As described above, ORS 190.080(3) prescribes that the debts of TJC are the debts of the counties as the "parties to the intergovernmental agreement that created the entity." Although the counties argue that ORS 190.080(3) does not expressly delegate power to the board, the counties point to no statutory provision limiting the implied powers of the board so as to prohibit the board from acknowledging the applicable liabilities of a participating employer.

Given that ORS 190.080(3) fixed the liability of the counties for the intergovernmental entity they created and dissolved, the rate-setting authority of ORS 238.225 allowed the board to set the counties' liabilities at a level that would fund those liabilities "no more than 40 years after the date" that determination was made. Accordingly, the board did not err in determining that it could account for the counties' liabilities, inclusive of TJC's outstanding liabilities, through its rate-setting abilities, and the trial court did not err in reaching the same conclusion. For those reasons, we affirm.

Affirmed.