Argued and submitted December 6, 2012, reversed and remanded to the circuit court with instructions to remand to DLCD for further proceedings consistent with this opinion February 13, 2013

David PAPWORTH,
*Petitioner-Appellant,*

*v.*

OREGON DEPARTMENT OF LAND
CONSERVATION AND DEVELOPMENT,
a department of the State of Oregon;
and Lorelei Lewis,
*Respondents-Respondents.*

Washington County Circuit Court
C103764CV; A148790

296 P3d 632

William K. Kabeiseman argued the cause for appellant. With him on the opening brief was Garvey Schubert Barer.

With him on the reply brief were Jennifer Bragar and Garvey Schubert Barer.

Stephanie L. Striffler, Senior Assistant Attorney General, argued the cause for respondent Oregon Department of Land Conservation and Development. With her on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Mark L. Huglin argued the cause for respondent Lorelei Lewis. With him on the brief was Draneas & Huglin, P.C.

Before Armstrong, Presiding Judge, and Duncan, Judge, and Brewer, Judge pro tempore.

DUNCAN, J.

### DUNCAN, J.

Pursuant to Ballot Measure 49 (2007), Lorelei Lewis (claimant) sought approval from the Department of Land Conservation and Development (DLCD) for three total home sites on her property in Washington County. DLCD issued an order approving three total home sites, including the dwelling already established on the property. David Papworth (petitioner), a neighboring property owner, sought judicial review of the order in Washington County Circuit Court. The circuit court affirmed the order, and petitioner appeals. Petitioner contends that claimant did not meet the Measure 49 requirements for development of additional home sites. Specifically, he contends that claimant did not meet the requirement, set out in section 6(6)(f) of Measure 49, that, "[o]n the claimant's acquisition date, the claimant lawfully was permitted to establish" additional home sites. For the reasons explained below, we agree with petitioner and, therefore, reverse and remand.

To provide context for the legal issue in this case, we begin with a brief review of the history of Measure 49 and its predecessor, Ballot Measure 37 (2004). On November 2, 2004, the citizens of Oregon adopted Measure 37. That measure was intended to ameliorate adverse effects of restrictive land use regulations on property owners who had acquired their property before those regulations were adopted. *See Friends of Yamhill County v. Board of Commissioners*, 351 Or 219, 223-25, 264 P3d 1265 (2011) (describing enactment of Measure 37); *Corey v. DLCD*, 344 Or 457, 460, 184 P3d 1109 (2008) (same). Measure 37 required public entities that had adopted restrictive land use regulations either to pay property owners just compensation for the diminution in the value of their property resulting from the regulations adopted after the owners had acquired the property or to waive the regulations. *Former* ORS 197.352 (2005), *amended by* Or Laws 2007, ch 424, § 4, *renumbered as* ORS 195.305 (2007). Under Measure 37, a waiver allowed the property owner "to use the property *for a use permitted at the time the owner acquired the property.*" *Former* ORS 197.352(8) (2005) (emphasis added).

In response to concerns about the effects of Measure 37, the legislature drafted legislation and referred it to the voters as Measure 49 in 2007. The purpose of Measure 49, as stated in the measure itself, was to "modify [Measure 37] to ensure that Oregon law provides just compensation for unfair burdens while retaining Oregon's protections for farm and forest uses and the state's water resources." ORS 195.301(2). To do so, Measure 49 "extinguish[ed] and replace[d] the benefits and procedures that Measure 37 granted to landowners." *Corey*, 344 Or at 465. Instead of providing for monetary compensation or waivers authorizing any use permitted at the time property owners acquired their property, as Measure 37 did, Measure 49 provides property owners with relief in the form of "[h]ome site approval[s]." ORS 195.300(12) (defining "home site approval" as "approval of the subdivision or partition of property or approval of the establishment of a dwelling on property.") Generally speaking, Measure 49 provides for approval of up to three, or, in certain circumstances, 10 home sites. Section 6 of Measure 49 governs applications for up to three home sites. Section 7 of Measure 49 governs applications for four to 10 home sites.

After the enactment of Measure 49, Measure 37 claims were no longer effective, and property owners who had made Measure 37 claims could apply to have them reviewed under Measure 49. To be eligible for up to three home sites, including any home sites already established on the property, section 6(2)(b), a claimant must have filed a timely claim under Measure 37 and must satisfy the requirements of section 6(6) of Measure 49.[1] Those

---

[1] Section 6(6) of Measure 49 provides:

"To qualify for a home site approval under this section, the claimant must have filed a claim for the property with both the state and the county in which the property is located. In addition, regardless of whether a waiver was issued by the state or the county before December 6, 2007, to qualify for a home site approval under this section the claimant must establish that:

"(a) The claimant is an owner of the property;

"(b) All owners of the property have consented in writing to the claim;

"(c) The property is located entirely outside any urban growth boundary and entirely outside the boundaries of any city;

"(d) One or more land use regulations prohibit establishing the lot, parcel or dwelling;

requirements include that, "[o]n the claimant's acquisition date, the claimant lawfully was permitted to establish at least the number of lots, parcels or dwellings on the property that are authorized under this section." Section 6(6)(f). Section 21(1) of Measure 49, generally and as pertinent here, defines "acquisition date" as "the date the claimant became the owner of the property as shown in the deed records of the county in which the property is located." ORS 195.328(1).

The issue in this case is whether claimant satisfied the requirements of section 6(6), specifically, the requirement, set out at section 6(6)(f), that she "lawfully was permitted" to establish at least three home sites "on her acquisition date," that is, on the date she "became the owner of subject property as shown in the deed records of the county in which the property is located."[2]

With the relevant statutory history and requirements in mind, we turn to the facts of this case. On December 28, 1973, claimant acquired 42.57 acres of rural property in Washington County. The property was zoned as agricultural land, specifically, F-1 land. There was one dwelling on the property. At the time claimant acquired the property, new lots for dwellings in the F-1 zone had to be at least 38 acres in size. Thus, claimant's property was too small to be divided to create a new lot for an additional dwelling.

Washington County had adopted the ordinance creating the 38-acre minimum lot size requirement in June 1973. Before the enactment of that ordinance, the minimum lot size had been five acres.

---

"(e) The establishment of the lot, parcel or dwelling is not prohibited by a land use regulation described in ORS 195.305(3); and

"(f) On the claimant's acquisition date, the claimant lawfully was permitted to establish at least the number of lots, parcels or dwellings on the property that are authorized under this section."

[2] Our recent opinions *Ericsson v. DLCD*, 251 Or App 610, 285 P3d 722, *rev den*, 353 Or 127 (2012), and *Bertsch v. DLCD*, 252 Or App 319, 287 P3d 1162 (2012), do not address the issue presented here. In both of those cases, there was no dispute that the relevant regulations were in effect on the claimants' acquisition dates. *Ericsson*, 251 Or App at 614-16; *Bertsch*, 252 Or App at 321-23.

The ordinance that created the 38-acre minimum lot size requirement had a "sunset clause." It provided that the 38-acre minimum was in effect "[f]rom the effective date of this ordinance (i.e. June 12, 1973) until December 15, 1973[.]" However, the 38-acre minimum did not expire on December 15, 1973. On December 4, 1973, the county adopted another ordinance, which extended the 38-acre minimum to December 31, 1973. Thus, when claimant acquired her property on December 28, 1973, the 38-acre minimum was in effect, although it had a sunset date of December 31, 1973. At some later point, the property was made subject to an 80-acre minimum lot size requirement.

In 2006, claimant filed Measure 37 claims with the state and county. Before the claims were resolved, the voters enacted Measure 49. Thereafter, claimant sought to have her Measure 37 claims reviewed under section 6 of Measure 49, seeking DLCD approval for up to three home sites. DLCD issued a written order concluding that claimant had satisfied the Measure 49 requirements for additional home sites, including the requirement that, "[o]n the claimant's acquisition date, the claimant lawfully was permitted to establish" additional home sites. DLCD acknowledged that the 38-acre minimum was in effect on claimant's December 28, 1973, acquisition date and, therefore, claimant was not lawfully permitted to establish additional home sites on that date. But, DLCD concluded that "the F-1 zone reverted back to [a] five-acre minimum on January 1, 1974."[3] Therefore, DLCD reasoned, "claimant lawfully could have established the three home sites under the zoning in effect three days following her date of acquisition and until more restrictive zoning was later implemented."

Petitioner sought judicial review of DLCD's order in the Washington County Circuit Court. A circuit court reviews state agency orders regarding home site approval under Measure 49 as orders other than contested cases. ORS 183.484(5); ORS 195.318. When, as here, a petitioner

---

[3] Although DLCD concluded that "the F-1 zone reverted back to [a] five-acre minimum on January 1, 1974," that conclusion is not supported by any evidence in the record. There is evidence in the record that Washington County adopted an entirely new zoning code on January 1, 1974, but there is no evidence regarding the minimum lot size for the F-1 zone under that code.

challenges an agency's interpretation of a statute, the circuit court reviews the agency's interpretation of the statute for legal error. ORS 183.484(5)(a). In the circuit court, petitioner argued that DLCD had erroneously interpreted the requirement of section 6(6)(f). Specifically, he argued:

> "[Section] 6(6)(f) * * * says you're allowed to have additional homes if on the claimant's acquisition date, the claimant was lawfully permitted to establish at least [the] number of dwellings that are allowed by DLCD's order. So 6(6)(f) says acquisition date. Not only that, section 21 gave a definition of what acquisition date means. It says a claimant's acquisition date is the date the claimant became the owner of the property [as] shown in the deed records of the county in which the property is located.

> "The measure is clearly structured to look at a snapshot. It says a claimant's acquisition [date] is the date the claimant became the owner of the property [as] shown in the deed records. The measure is set up for that snapshot view. It's about what happens on that date."

In response, claimant and DLCD acknowledged that claimant did not have the right to establish additional lots for dwellings on her acquisition date, but contended that claimant satisfied section 6(6)(f) because she had the right to establish additional lots after her acquisition date. Specifically, DLCD argued that a claimant satisfies the requirement of section 6(6)(f) if the claimant lawfully was permitted to establish the lots *on or after* the claimant's acquisition date. According to DLCD,

> "the legislative intent of Measure 49 is for the state to determine whether claimants could have developed home sites on their property *at any time between the date they acquired the property and the date restrictive land use regulations were enacted.*"

(Emphasis added.) The circuit court stated that it was inclined to conclude that, as DLCD argued, a claimant satisfies the requirement of section 6(6)(f) if, on or after the claimant's acquisition date, the claimant could have developed the requested home sites. But, the court further stated, it did not "need[] to do that," because, even if it took petitioner's "snapshot view" and focused on the law in effect

on claimant's acquisition date, the law included the sunset provision. Thus, according to the circuit court, on claimant's acquisition date, claimant lawfully was permitted to establish additional home sites, albeit not until after the sunset date.

We review the circuit court's judgment to determine whether the court correctly reviewed the agency's decision under the standards of ORS 183.484(5). "In practical effect, that means that we directly review the agency's order for compliance with the standards set out in ORS 183.484(5)." *G.A.S.P. v. Environmental Quality Commission*, 198 Or App 182, 187, 108 P3d 95, *rev den*, 339 Or 230 (2005). Thus, in this case, we—like the circuit court—review DLCD's interpretation of section 6(6)(f) for legal error.

When interpreting a statute enacted by legislative referral, our task is to discern the intent of the voters. *Burke v. DLCD*, 352 Or 428, 433, 290 P3d 790 (2012). To do so, we apply the same method of statutory analysis that we apply when interpreting a statute enacted by the legislature. *Id.* at 432-33. Accordingly, we look first to the text and context of the statute, taking into account any legislative history that illuminates the voters' intent. *Id.*; *see State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009) (prescribing method of statutory construction).

The text and context of a statute are the "best evidence" of the voters' intent. *Hoekstre v. DLCD*, 249 Or App 626, 634, 278 P3d 123 *rev den*, 352 Or 377 (2012); *Gaines*, 346 Or at 171 (text and context "must be given primary weight in the analysis"). When interpreting the text of a statute, we consider rules of statutory construction of that bear directly on how to read the text, including the statutory enjoinder not to insert what has been omitted or to omit what has been inserted. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993); ORS 174.010 ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted[.]") For context, we consider,

*inter alia*, case law and related statutes. *PGE*, 317 Or at 611.

The legislative history of a ballot measure includes "the ballot title and explanatory statement in the voters' pamphlet." *Hoekstre*, 249 Or App at 634. "Legislative history may be used to confirm seemingly plain meaning and even illuminate it; a party also may use legislative history to attempt to convince a court that superficially clear language actually is not so plain at all—that is, that there is a kind of latent ambiguity in the statute." *Gaines*, 346 Or at 172. However, "a party seeking to overcome seemingly plain and unambiguous text with legislative history has a difficult task before it." *Id.*

For the reasons explained below, we conclude that the text, context, and legislative history of Measure 49 establish that, in order for a claimant to be eligible for home site approvals under section 6, the claimant must have been lawfully permitted to establish the requested parcels, lots, or dwellings on the claimant's acquisition date. Specifically, section 6(6)(f) makes a claimant's eligibility for home site approval contingent on the land use regulations in effect on—not before or after—the claimant's acquisition date.

We begin with the text. As set out above, in order for a claimant to be eligible for home site approvals under section 6, the claimant must satisfy the requirements of section 6(6), including the requirement, set out at section 6(6)(f), that, "[o]n the claimant's acquisition date, the claim-ant lawfully was permitted to establish at least the number of lots, parcels or dwellings on the property that are author-ized under this section." The requirement is plain; it refers to the number of lots, parcels, or dwellings that the claimant was permitted to establish "[o]n the claimant's acquisition date." As such, it refers to a particular date in time, not a range of dates. To make the matter even more clear, section 21(1) of Measure 49 defines "acquisition date." As set out above, it provides that, generally, "a claimant's acquisition date is the date the claimant became the owner of the property as shown in the deed records of the county in which the property is located." ORS 195.328(1). The obvious purpose of the definition is to identify a particular date to

use when determining whether a claimant is entitled to relief under Measure 49.

The context of section 6(6)(f), which includes case law, supports that interpretation. In *Burke*, the Oregon Supreme Court explained that section 6 permits property owners "to obtain developmental approval of up to three additional homes on the property *if, on the date that the owner or owners acquired the property, then-existing land use regulations did not preclude such development." Burke*, 352 Or at 431 (emphasis added). The court continued, "an indispensable requirement of a Measure 49 claim under section 6" is that the property owner "acquired the property *before* any land use regulations that now preclude building the homes came into existence." *Id.* (emphasis in original). Thus, *Burke* confirms that whether a claimant satisfies the requirement of section 6(6)(f) depends on the land use regulations that existed on the date the claimant acquired the property and, therefore, a claimant is not entitled to relief from land use restrictions that were in effect on that date.

The legislative history of Measure 49 also supports the conclusion that, in order to be eligible for home site approvals under section 6, a claimant must prove that he or she could have established the requested lots, parcels, or dwellings on his or her particular acquisition date, regardless of whether he or she could have established them on a future date. The explanatory statement for Measure 49, provided by the 2007 Legislative Assembly, stated that

"[c]laimants may build up to three homes *if allowed when they acquired their properties.* * * * [T]his measure provides that those who choose to apply for up to three homes need only *show they had the right to build the homes they are requesting when they acquired their property."*

Official Voters' Pamphlet, Special Election, Nov 6, 2007, 19 (explanatory statement) (emphasis added). Similarly, the ballot title summary for Measure 49 stated that the measure

"[m]odifies Measure 37 (2004) to give landowners with Measure 37 claims the right to build homes *as compensation for land use restrictions imposed after they acquired their*

*properties.* Claimants may build up to three homes *if previously allowed when they acquired their properties*[.]"

*Id.* at 7 (ballot title summary) (emphasis added).

As Measure 49's explanatory statement and ballot title summary demonstrate, the purpose of Measure 49 was to provide relief, albeit not full relief, to property owners whose land use opportunities were restricted *after* they acquired their property. Thus, whether claimants are eligible for relief in the form of home site approvals under section 6 depends on whether they where "previously allowed [to build the homes] when they acquired their properties." *Id.* That is, it depends on whether "they had the right to build the homes they are requesting when they acquired their property." *Id.* at 19 (explanatory statement).

Here, there is no dispute that claimant acquired the property on December 28, 1973, nor is there any dispute that, on that date, the property was zoned F-1 and, as such, subject to a 38-acre minimum lot requirement. In other words, on claimant's acquisition date, the "then-existing land use regulations," *Burke*, 352 Or at 431, prohibited her from establishing any additional lots for dwellings because her 42.57-acre property could not be divided into lots that would satisfy the 38-acre minimum lot size requirement. Therefore, claimant did not have a right to build the homes on the date she acquired the property; to the contrary, she was prohibited from building them. Thus, this is not a case where a claimant is entitled to relief on the ground that she has suffered a loss as a result of a land use regulation enacted that took effect *after* she acquired her property; land use regulations prohibited her from building on her property *when* she acquired it.

Claimant and DLCD understandably argue that the restrictive regulation was temporary, and they contend that enforcing the plain text of section 6(6)(f) would be unfair to claimant and contrary to the purpose of Measure 49, as they understand it. However, we cannot accept their argument. Section 6(6)(f) creates a bright-line rule; it establishes a clear and logical baseline for determining whether there has been a change in land use regulations for which relief can be granted. It forces claimants and DLCD to focus on whether a

claimant was lawfully permitted to establish the requested lots, parcels, or dwellings on the claimant's acquisition date. Under section 6(6)(f), the dispositive question is whether the restriction was in effect on the claimant's acquisition date, not whether the restriction was in effect before or after (even very shortly before or after) the claimant's acquisition date.

To accept the argument proffered by claimant and DLCD, we would have to read section 6(6)(f) as conditioning Measure 49 relief not on the restrictions that existed *on* a claimant's acquisition date, but on those that existed *on or after* the claimant's acquisition date. Doing so would violate the rule of statutory construction that we are not to insert what has been omitted. ORS 174.010.

Claimant and DLCD argue that the sunset clause was part of the law in effect on claimant's acquisition date. That is true. But, the sunset clause did not how many lots, parcels, or dwellings claimant could establish on her acquisition date. The practical effect of claimant and DLCD's argument would be that any land use regulation with a sunset clause would not count as a regulation in effect on a claimant's acquisition date for Measure 49 purposes, regardless of the how long the regulation would be in effect or the likelihood that it would be renewed.

Perhaps to mitigate that effect, DLCD seems to suggest that claimant is entitled to relief because she acquired her property close in time to the sunset date for the 38-acre minimum lot size requirement. In other words, DLCD seems to argue that claimant was "close enough." The difficulty with that argument is that there is no principled way for a claimant, DLCD, or courts to determine what is "close enough." Indeed, the claim in this case is similar to another, which DLCD denied on the ground that the claimant had not satisfied the requirement of section 6(6)(f) because the very same 38-acre minimum at issue here was in effect on the claimants' acquisition date. The claimants in that case had purchased property zoned F-1 in Washington County on June 25, 1973, less than two weeks after the 38-acre minimum—with a sunset date of December 15, 1973—took effect. Final Staff Report and Recommendation,

M119546 - Kempema, DLCD (July 26, 2005). DLCD denied those claimants Measure 49 relief on the ground that they had failed to satisfy the requirement of section 6(6)(f). In its written order, DLCD explained:

> "[T]he F-1 zone required than [*sic*] any new parcels be at least 38-acres in size (see sections 152-1.1 and 156-1.4(b) as amended by Resolution and Order No. 73-131 adopted on June 5, 1973, effective June 12, 1973). As such, the Claimants' 55.81 acre parcel could not have been divided when it was acquired in 1973[.]"

*Id.* at 4. Thus, in a Measure 49 case involving the same ordinances during the same time period as the present case, DLCD interpreted section 6(6)(f) of Measure 49 as describing the number of lots, parcels, or dwellings lawfully permitted on the claimant's precise acquisition date, not on what might be permitted on a future date.

In sum, because the plain text of section 6(6)(f) makes Measure 49 relief contingent on the lots, parcels, and dwellings that a claimant could establish on the claimant's acquisition date, as opposed to a future date, we conclude that the circuit court erred in affirming DLCD's order, and we reverse and remand.

Reversed and remanded to the circuit court with instructions to remand to the Department of Land Conservation and Development for further proceedings consistent with this opinion.