Argued and submitted June 2, 2022, affirmed July 12, 2023

Craig CHILDRESS, Psy.D.,
*Petitioner,*

*v.*

OREGON BOARD OF PSYCHOLOGY,
*Respondent.*

Agency/Board/Other
2020001; A176119

533 P3d 1099

Petitioner seeks judicial review of a final order by the Oregon Board of Psychology concluding that he engaged in the unlicensed practice of psychology and imposing a $7,500 penalty. Petitioner, a California resident licensed to practice psychology in that state but not in Oregon, authored a psychological report provided to individuals in Oregon. On review, he argues that the board erred as a matter of law because he provided the report to an organization and thus fell under the licensing exemption of ORS 675.090(1)(a), and that the board acted outside the range of permissible discretion by imposing the $7,500 penalty. *Held*: After review of the statute's text, context, and legislative history, the Court of Appeals concluded that ORS 675.090(1)(a) did not exempt petitioner from the licensing requirement under the circumstances of this case. Accordingly, the board did not err in concluding that petitioner engaged in the unlicensed practice of psychology. Having determined that petitioner did so, the board assessed a penalty within the range of its discretion.

Affirmed.

Janet M. Schroer argued the cause for appellant. Also on the briefs was Hart Wagner LLP.

Carson L. Whitehead, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

POWERS, J.

Affirmed.

**POWERS, J.**

Petitioner seeks judicial review of a final order by the Oregon Board of Psychology concluding that he engaged in the unlicensed practice of psychology and imposing a $7,500 penalty. Petitioner, a California resident licensed to practice psychology in that state but not in Oregon, authored a psychological report provided to individuals in Oregon. Based on that conduct, the board determined that petitioner engaged in the practice of psychology in this state, which requires an Oregon license. On review, he raises three assignments of error: First, he argues that the board erred as a matter of law because he provided the report to an organization and was exempt from the licensing requirement under ORS 675.090(1)(a); second, he contends that the record lacks substantial evidence to support any link between his report and Oregon; and third, he argues that the board acted outside the range of permissible discretion by imposing the $7,500 penalty. For the reasons that follow, we affirm.

## STANDARD OF REVIEW

We review the board's order for legal error to determine whether it erroneously interpreted a provision of law. ORS 183.482(8)(a). When determining whether the board correctly interpreted its own rule, we defer to the board's interpretation if its interpretation is not inconsistent with the wording of the rule itself, with the rule's context, or with any other source of law. *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994).

## PROCEDURAL BACKGROUND

The facts are mostly undisputed. At all material times, petitioner was licensed to practice psychology in California and was not licensed to practice psychology in Oregon. In his capacity as a psychologist, petitioner worked as a consultant for the Conscious Co-Parenting Institute (CCPI), a California-based company that provides co-parenting strategies to divorcing parents. CCPI offers a service called the "Custody Resolution Method," whereby clients respond to questions and submit records and archival data (*e.g.*, emails or text messages between family members) to be compiled in CCPI's software program. Using

predetermined categories, CCPI then identifies frequencies of categories within the data and creates a data profile based on the submitted information. The data profile and mental health categories created by CCPI require interpretation by a psychological professional familiar with pathology and its treatment. Thus, CCPI sends the data profile—along with the raw, archival data—to petitioner. Petitioner reviews the information and produces a "Consultation Report," which is his professional opinion and assessment of the pathology in the family. Petitioner uses the frequency counts to indicate potential areas of concern and he recommends areas needing additional direct assessment from a mental health professional. The report may be used by the client to encourage resolution of the conflict or as evidence in custody hearings to convince the court that a clinical psychology assessment of the pathology in the family is necessary.

In this case, father, who is an Oregon resident, was in a high-conflict custody dispute and hired CCPI to conduct the Custody Resolution Method for himself and his family. He submitted data and information to CCPI that they used to create a profile of father, his child, and the child's mother. As typical, CCPI sent the profile and submitted data to petitioner, and petitioner reviewed the profile and data, produced a report, and returned it to CCPI. CCPI passed the report to father without any changes or commentary. CCPI paid petitioner directly; he had no contact with father or other members of the family, and petitioner did not verify the accuracy of the data submitted. The report included disclaimers throughout, including that it was not a diagnosis and that formal clinical interviews were necessary.

The report was brought to the attention of the Oregon Board of Psychology, which subsequently opened an investigation to determine whether, by producing the report, petitioner had unlawfully practiced psychology in Oregon without a license. Ultimately, the board sent petitioner a Notice of Intent to Impose Civil Penalty of $7,500, and petitioner requested a contested case hearing before an administrative law judge (ALJ). Prior to the hearing, the board filed an amended notice detailing the allegations against petitioner for practicing psychology and representing himself to be a psychologist in the state without a license

in violation of ORS 675.020(1)(a), (b). Evidence at the hearing included testimony from both petitioner and the board's expert, Dr. Ferder.

The ALJ issued a proposed order, and the board issued a final order that concluded—after rejecting petitioner's exceptions to the ALJ's order—that petitioner was subject to the $7,500 penalty because he had engaged in the practice of psychology in Oregon. Relying on ORS 675.010(4), which defines the "practice of psychology" to include "rendering or offering to render supervision, consultation, evaluation or therapy services to individuals, groups or organizations for the purpose of diagnosing or treating behavioral, emotional or mental disorders," the board determined that petitioner had rendered both "consultation" and "evaluation" services to father. Under either approach, the board concluded, petitioner had engaged in the practice of psychology. Petitioner timely sought judicial review of the board's final order.

## ANALYSIS

We begin with the issue of consultation, which is defined by the board's administrative rules. OAR 858-010-0001(1)(c) provides: "'Consultation' means conferring or giving expert advice on the diagnosis or treatment of mental disorders[.]" The board concluded that, in producing his report, petitioner gave expert advice on the diagnosis or treatment of mental disorders specific to father and his family. Petitioner acknowledges that the report he produced could constitute consultation services but argues that the consultation was provided to CCPI and did not require a license because "consulting services to an organization" are exempt from the licensing requirement under ORS 675.090(1)(a). The board contends that the exemption was not intended to apply where the consultation services are passed through an organization but are provided for the benefit of an individual.

As framed by the parties' arguments, the issue before us is a question of statutory interpretation, which we resolve by considering the statute's text, context, and any relevant legislative history to discern the legislature's intent. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009)

(describing the statutory interpretation methodology). Our review must determine whether the board's construction of the statute comports with the legislature's intent. We start with the text and context of the statute, which provide the best evidence of legislative intent. *Papworth v. DLCD*, 255 Or App 258, 265, 296 P3d 632 (2013).

ORS 675.090(1)(a) exempts from licensing "[a] person who teaches psychology, conducts psychological research or provides consulting services to an organization or institution, provided that the person does not supervise direct psychological services and does not treat any behavioral, emotional or mental disorder of an individual." In petitioner's view, the text of the statute exempts the report he provided to CCPI, an organization, from the Oregon licensing requirement. He argues that, because he was hired by CCPI, provided the report to CCPI, and had no contact with father or any other individual in Oregon, his report constituted "consulting services to an organization." Nothing in the text of the statute, petitioner contends, supports the board's conclusion that CCPI's passing of the report to father transformed the consultation with CCPI into a consultation with father.

The board remonstrates that the legislature intended the exemption to be a narrow one that applies only when the person provides consultation services for the benefit of the organization itself and not when the services are performed for the benefit of an individual. The board asserts that father was the subject, recipient, and beneficiary of petitioner's report; thus, petitioner's report did not provide consultation services to an organization and, therefore, the exemption does not apply. For the reasons that follow, we agree with the board's contention that ORS 675.090(1)(a) does not apply to petitioner under the circumstances of this case.

The record shows that father and his family, individuals living in Oregon, were the subject of petitioner's report.[1] The report discussed father's mental health issues,

---

[1] Petitioner disputes that the record shows that father and his family lived in Oregon. As noted below, however, we conclude that his second assignment of error is not preserved for appellate review. Even if it were, however, the record supports the board's finding that the subjects of the report lived in Oregon.

mother's alleged manipulative behavior, how such conditions could impact the child, and provided possible diagnoses and treatment options specific to the child. The record further shows that, despite having no direct contact with the family, petitioner's report was passed from CCPI to father with no changes or commentary, and the report provided no internal benefit for CCPI itself.[2] In our view, it stretches the bounds of the text of ORS 675.090(1)(a) to conclude that a psychologist can provide expert advice on the diagnosis or treatment of mental disorders to individuals within this state without a license, merely because the psychologist utilized an organization to pass along such services. That is, petitioner's proposed construction of the limited exception appears to create a loophole that is not consistent with the statutory framework generally requiring an Oregon license.

       The context of the statute supports this view. The other two activities that are exempt from licensing under subsection (1)(a) are teaching psychology and conducting psychological research. Exempting teachers and researchers from the licensing requirement comports with the legislature's express purpose for instituting the licensing requirement: "To safeguard the people of the State of Oregon from the dangers of unqualified and improper practice of psychology[.]" ORS 675.020. That is, exempting teachers and researchers—who, under the terms of the statute, may not supervise direct psychological services or treat any behavioral, emotional, or mental disorders of individuals—seems unlikely to disturb the purpose of the Oregon licensing requirement. Exempting petitioner's conduct of providing expert advice about the treatment of mental disorders for a child living in Oregon, on the other hand, exposes Oregonians to advice specific to them from practitioners who have not been licensed to practice in Oregon. Therefore, we conclude that it is unlikely that the legislature intended—in the same sentence that it exempts teachers and researchers—to exempt a third category, *viz.*,

---

[2] On review, petitioner disputes that the record shows that CCPI made no changes to the report. At the contested hearing, however, petitioner testified that "the report that's currently in submission and the ones I testified to are my reports and no changes have been made to them." Further, there is no evidence in the record demonstrating that the report was used internally at CCPI for training or other purposes.

out-of-state professionals providing consultation services to individuals within this state so long as they use an organization to pass along their services.

In our view, the phrase "consulting services to an organization" is consistent with Ferder's testimony: "the provision of psychological consulting services to an organization or institution requires interaction with the organization or institution regarding some essential aspect of the organization or institution itself, matters that are pertinent to the internal functioning of the organization or institution." Given its placement in the statute, and because it conflicts with the explicit purpose of the licensing requirement, we are unpersuaded that the exemption for "consulting services to an organization" was intended to open the door for petitioner to review data specific to an individual in Oregon, provide an assessment and interpretation of that data, and then propose specific diagnoses for that individual—all with no involvement from CCPI itself, aside from delivering the information between the two parties.

We are also not persuaded by petitioner's argument that ORS 675.090(1)(b) provides context in support of his interpretation. That subsection exempts from licensing "[t]he provision of expert testimony by a person described in paragraph (a) of this subsection." Petitioner contends that paragraph (1)(b) would apply where "the client hires a lawyer, the lawyer in turn hires a non-Oregon licensed psychologist who performs an evaluation or consultation, and provides subsequent expert testimony." Petitioner asserts that that situation is no different than the one presented in this case and that both are permissible. We first note that "evaluations" are never exempt under the statute, regardless of who they are provided to. Second, paragraph (a) limits the application of paragraph 1(b) to "a person who teaches psychology, conducts psychological research or provides consulting services to an organization or institution"—which circles back to the question at the heart of this case, whether petitioner was providing consulting services to an individual or to an organization. Psychologists who are not licensed in this state may not provide consulting services to individuals in this state, as petitioner did, merely because an organization—or lawyer—hires them to do so. Accordingly,

we conclude that nothing in the text or context of the statute suggests that the legislature intended that the provision of consulting services to individuals in Oregon be exempt from the licensing requirement.

Finally, a review of previous versions of the statute provides additional support that the legislature intended to exclude petitioner's conduct from the exemption. *See, e.g.*, *Montgomery v. City of Dunes City*, 236 Or App 194, 199, 236 P3d 750 (2010) ("Changes in the text of a statute over time are context for interpreting the version at issue in a given case."). In a prior version, the statute exempted from licensing:

> "A person who teaches psychology, conducts psychological research or provides consulting services to an organization or institution provided that the teaching, research or consulting services do not involve the delivery or supervision of direct psychological services to individuals who are themselves, rather than a third party, the beneficiaries of the services, regardless of the source or extent of payment for the services rendered."

ORS 675.090(1)(a) (2013).

The 2013 statute clearly prohibits the conduct at issue in this case: It dictates that the source of the payment is irrelevant; if individuals are themselves the beneficiaries of the direct psychological services, and said services are delivered to them, the exemption does not apply. As noted earlier, father and his family were the individual beneficiaries of the report; the report was delivered to them and, under the terms of the 2013 statute, the fact that the third party—CCPI—was the source of payment and delivery is irrelevant.

At the committee hearing to amend the 2013 statute, the discussion was mostly unrelated to the change made to paragraph (1)(a). However, the *then*-Chair of the Oregon Board of Psychologist Examiners and a proponent of the bill, testified to the purpose of that particular alteration. The proposed change was "with the intent of hoping to make the bill more readable. And that is in lines six through nine which are intended to be deleted and replaced with lines 10 and 11. I believe that you will find that lines 10 and 11

say the same thing as six through nine but much more succinctly and clearly." Audio Recording, House Committee on Health Care, HB 2081, Feb 13, 2013, at 28:10 (statement of Dr. Haydon), https://olis.oregonlegislature.gov (accessed Apr 14, 2023). The lines referenced by Haydon refer to paragraph (1)(a). Based on Haydon's testimony, the wording of paragraph (1)(a) in the current version of the statute was intended to have the same meaning as paragraph (1)(a) in the 2013 statute.

We recognize that the testimony of a single, nonlegislator witness is not conclusive evidence of legislative intent. *See Linn-Benton-Lincoln Ed. v. Linn-Benton-Lincoln ESD*, 163 Or App 558, 569, 989 P2d 25 (1999) ("[W]e are reluctant to draw decisive inferences concerning legislative intent [because] *** the statements were made by witnesses and are not direct expressions of legislative intent."); *State v. Stamper*, 197 Or App 413, 424-25, 106 P3d 172, *rev den*, 339 Or 230 (2005) ("[W]e are hesitant to ascribe to the Legislative Assembly as a whole the single remark of a single nonlegislator at a committee hearing."). However, where the statement is from a proponent of the bill, and the statement is not inconsistent with statements from the legislators, the statement can be indicative of legislative intent. *See State v. Kelly*, 229 Or App 461, 467, 211 P3d 932, *rev den*, 347 Or 446 (2009) (observing that, "[i]n the case of nonlegislator statements, courts tend to be more wary, but do accord them some weight when the nonlegislators sponsored the legislation and who, as a result, are in a good position to describe its purpose and intended effect"); *State v. Worth*, 274 Or App 1, 38-42, 360 P3d 536 (2015), *rev den*, 359 Or 667 (2016) (relying on statements of a representative of the Oregon District Attorneys Association, which sponsored the bill and whose comments were consistent with statements of legislators). Haydon was a proponent of the amendment and openly announced to the committee members that the change was not intended to alter the meaning of the paragraph; moreover, we have found no evidence of a contrary intention. Accordingly, in our view, the statute's text, context, and legislative history comport with the board's interpretation of the statute, and we conclude that the licensing exemption did not apply to petitioner's conduct in this case.

Petitioner also argues that, in determining that the exemption did not apply to him, the board improperly relied on expert testimony and articles from the American Psychological Association to retroactively redefine the meaning of the exemption statute. Citing *Megdal v. Board of Dental Examiners*, 288 Or 293, 605 P2d 273 (1980), he argues that the board had to specify what it meant by "consulting services to an organization or institution" through rulemaking before taking an enforcement action. Instead of doing so, petitioner argues that the board relied on Ferder's testimony and the articles to conclude that his conduct did not fall within the statute's exemption. Again, we are unpersuaded.

The board's final order cites the applicable statutes and administrative rules and, using the language from those statutes and rules, concludes that petitioner engaged in the practice of psychology by providing "consultation" and "evaluation" services to an individual in Oregon. As discussed above, we agree with the board's interpretation. The board's inclusion in its final order of exhibits and testimony that were admitted at the case hearing is neither improper nor unusual, and they were not adopted by the board in place of the statutes or rules.

Nor do we agree that the board was required to adopt a rule defining the phrase "consulting services to an organization or institution" prior to this action. Where a statutory term expresses a legislative objective but does not represent completed legislation, *Megdal* instructs that an agency define such delegative terms through rulemaking prior to enforcement actions. *Springfield Education Assn. v. School Dist.*, 290 Or 217, 230, 621 P2d 547 (1980). Examples of delegative terms include "fair," "undue," and "unreasonable." *Id*. at 228. As petitioner appears to acknowledge, the terms at issue here are not delegative terms but are instead inexact terms. *See Nulph v. Board of Parole*, 279 Or App 652, 658, 381 P3d 948 (2016), *rev dismissed*, 361 Or 351 (2017) (explaining the four considerations courts use to distinguish inexact terms from delegative terms). When the terms at issue are inexact terms, the role of the agency and the court is to determine what the legislature intended by using those

terms. *Id*. at 657. We have done so here and conclude that the board appropriately applied the terms of the statute, was not required to adopt a rule defining the terms at issue, and that petitioner was not exempt from licensing under the terms of ORS 675.090(1)(a).

The board also concluded that, in producing the report, petitioner rendered "evaluation" services to father and his family. "Evaluation," which is also defined in the board's administrative rules, "means assessing or diagnosing mental disorders or mental functioning, including administering, scoring, and interpreting tests of mental abilities or personality." OAR 858-010-0001(1)(a). As noted earlier, evaluation services are not included in the exemption statute. The board's final order concluded that petitioner's report provided his "assessment of the child and the family pathology," including "a specific diagnosis for the child" (albeit one that is qualified with various disclaimers).

Petitioner argues that he did not provide "evaluation" services because he did not assess or diagnose anyone. Petitioner's report has various disclaimers throughout, including: "Archival data cannot make a diagnosis, only clinical interviews informed by data can make a diagnosis." He contends that the disclaimers show that he did not diagnose anyone because diagnoses require confirmation through clinical assessments, which he did not conduct.

The board argues that the record supports its conclusion that petitioner's report provided an assessment and diagnosis for father and his family. The board contends that petitioner examined data specific to the family members and, based on that data, "reached a preliminary DSM-V diagnosis for the child and made an assessment of family pathology." The final order cites extensively from petitioner's report, including:

> "Of concern in this family is that the mother is manipulatively incorporating the child, [C], into a cross-generational coalition against the father, thereby inflicting emotional hurt and suffering on the (ex-spouse) father for the failed marriage and divorce, using the child as a weapon.
>
> "* * * * *

"The CRM data profile reported 9 [Associated Clinical Signs (ACS)] symptoms offering *Extremely Strong Support* for the identification of pathogenic parenting by the primary three Diagnostic Indicators. The ACS symptoms also includes ACS-3 the Exclusion Demand. When ACS-3 the Exclusion Demand appears in the child's symptom display, it is almost 100% diagnostic of the multigenerational trauma pathology and would substantially confirm pathogenic parenting by an allied parent. * * *

"* * * * *

"**Diagnosis**: If these symptom[s] are confirmed by a professional mental health assessment, then the DSM-5 diagnosis for the child would be:

"Child: 309.4 Adjustment Disorder

"V61.20 Parent-Child Relational Problem

"V61.29 Child Affected by Parental Relationship Distress

"V995.51 Child Psychological Abuse, Confirmed (pathogenic parenting)."

(Bracketed text, emphasis, and boldface in original.)

Having reviewed the record, we agree with the board that petitioner's report meets the definition of rendering "evaluation" services to individuals. We are unpersuaded by petitioner's argument that his disclaimers or qualifying statements take it outside the definition of an evaluation. In our view, a determination that the symptoms are "almost 100% diagnostic" of a certain pathology and proposing specific diagnostic codes for the child meets the standard of rendering evaluation services to an individual.

Turning to petitioner's second and third assignments of error, he argues (a) that there is no evidence that the individuals referenced in his report were Oregon residents and (b) that the board abused its discretion by imposing a $7,500 civil penalty. As the board contends, petitioner's second assignment is unpreserved, and we do not address it. *See Rushton v. Oregon Medical Board*, 313 Or App 574, 576-77, 497 P3d 814 (2021) (explaining that the rules of preservation apply to judicial review of agency decisions and citing cases). Regarding his third assignment, petitioner contends

that the penalty was excessive, exorbitant, disproportionate considering the amount he was paid for the report, and that the board failed to adequately explain why $7,500 was the appropriate penalty. The board contends that the only part of petitioner's argument that was preserved below was that the penalty was excessive and exorbitant. Even if all of petitioner's arguments were preserved, however, we conclude that the board did not stray outside its permissible range of discretion by imposing the $7,500 penalty. ORS 675.070(3)(b)(E) authorizes the board to impose a penalty not to exceed $10,000 where a person is found to have practiced psychology without a license. Having determined that petitioner did so, the board assessed a penalty within the range of its discretion.

Affirmed.